[Civ. No. 10276.   Third Dist.   May 10, 1962.]

BETHLEHEM PACIFIC COAST STEEL CORPORATION, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

Theodore R. Meyer, Hart H. Spiegel, Duncan E. Haynes, Brobeck, Phleger & Harrison and Cravath, Swaine & Moore for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Ernest P. Goodman and John J. Klee, Jr., Deputy Attorneys General, for Defendant and Respondent.

STEEL, J. pro tem.*—This is a suit for refund of California franchise tax paid by plaintiff and appellant, Bethle-

---

* Assigned by Chairman of Judicial Council.

hem Pacific Coast Steel Corporation, to California Franchise Tax Board for the taxable year 1950.

Involved herein is a transfer by Bethelehem Steel Company of Pennsylvania of all of its California business and property to appellant, both corporations being subsidiaries and wholly owned by Bethlehem Steel Corporation of Delaware. The transfer was concluded December 31, 1949.

The issue in the case is whether the net income earned in 1949 by the transferor, Bethlehem Steel Company, at-. tributed to the transferred assets, should be included in the measure of franchise tax for the year 1950, pursuant to the reorganization provisions of sections 13(h) and 13(j) of the Bank and Corporations Franchise Tax Act. (The act has been codified and is found in Revenue and Taxation Code at section 23001 et seq., the counterparts being sections 23251 and 23253.)

The facts are simple, not in dispute, and are contained in a stipulation of facts as a part of the record. The facts disclose that there are three corporations concerned herein, while only two are principally involved. The third, Bethlehem Steel Corporation of Delaware, the parent of the two subsidiaries, did not itself do business in California but owned all of the stock of the corporations. Appellant was at all times herein mentioned engaged in the business of the manufacture, construction, fabrication, and assembly and sale of steel products in California, as well as in other states. Bethlehem Steel Company is also engaged in the business of manufacturing steel and steel products in other states, and prior to December 31, 1949, had conducted the business of ship repair and construction in certain yards located in California. The net assets of its California operations were approximately one per cent of its total assets.

On the 31st day of December 1949, at the close of business, Bethlehem Steel Company transferred all of its California business and property to appellant and surrendered its right to do business in California. The transfer was accomplished by appropriate bookkeeping entries in the open accounts of all three corporations concerned. The net book value used was approximately $3,129,978, which represented the difference between the total assets transferred and the liabilities assumed. The California net income in 1949 of Bethlehem Steel Company from the business and property so transferred was approximately $1,500,000. It is 4 per cent of this amount

which was paid under protest and the subject of this action for refund. Thereafter, the Bethlehem transferor, having no property or business in California, was not required to, and did not, pay any franchise tax for the year 1950. Appellant initially reported and paid a franchise tax for the year 1950, measured solely by its 1949 net income from California sources, but did not include the 1949 net income of the Bethlehem Steel Company on its California property and business attributable to the property transferred. The Franchise Tax Board found and determined that the transaction of December 31, 1949, came within the reorganization provisions of the Bank and Corporations Franchise Tax Law and that appellant should have included in its 1950 franchise tax the net income for 1949 on the transferred property.

An assessment was made accordingly and paid by appellant under protest; a claim was filed for refund, which was denied, and the instant suit was brought for the claimed refund, which resulted in a judgment for the defendant in the lower court, from which judgment this appeal followed.

The main issue presented is whether or not the transaction of December 31, 1949, constituted a ''reorganization'' within the meaning and contemplation of said sections 13(h) and 13(j) of the Bank and Corporations Tax Act which reads as follows, as amended in 1939:

''(h) (1) Where, pursuant to a reorganization, all or a substantial portion of the business or property of a bank or corporation, a party to the reorganization, is transferred to another bank or corporation, a party to the reorganization: (A) The net income of the transferor from the business or property so transferred to any bank or corporation for the taxable year in which the transfer occurs, shall be included in the measure of the tax on the transferee for the taxable year succeeding the taxable year in which the transfer occurs. . . .'' (Cal. Stats. 1949, ch. 513, § 7, p. 888.)

''(j) The term 'reorganization' as used in this section means (1) a transfer by a bank or corporation of all or a substantial portion of its business or property to another bank or corporation if immediately after the transfer the transferor or its stockholders or both are in control of the bank or corporation to which the assets are transferred; or (2) a mere change in identity, form or place of organization however effected; or (3) a merger or consolidation; or (4) a distribu-

tion in liquidation by a bank or corporation of all or a substantial portion of its business or property to a bank or corporation stockholder, and the bank or corporation stockholder continues all or a substantial portion of the business of the liquidated bank or corporation. As used in this paragraph the term 'control' means the ownership of at least 80 per cent of the voting stock and at least 80 per cent of the total number of shares of all other classes of stock of the bank or corporation." (Cal. Stats. 1949, ch. 513, § 7, p. 888.)

If there was a reorganization pursuant to the provisions of the act it follows that there is no basis for a refund.

First, it must be determined whether such transfer was "all or a substantial portion" of the Bethlehem Steel Company's business or property within the meaning of said sections. The respondent tax board determined and the trial court found that while the transfer may constitute only one per cent of its net assets wheresoever situated, it would nevertheless constitute all (100 per cent) of its California business and property, and that the taxing statute should be construed to apply to California property and business only. The parent corporation, Bethlehem Steel Corporation, retained control of the business and property by reason of its ownership of all the stock of appellant transferee. Consequently continuity of ownership requirement is established.

It is conceded that in considering the constitutionality of said reorganization sections they must be construed to exclude from the measure of tax on the transfer any income from out-of-state sources. The lower court in resolving the question and in construing the act concluded that the Legislature in levying a tax measured by income on "all or a substantial portion of . . . business or property" so transferred, had in mind that "the substantial portion" had reference to *California business or property* and none other. Appellant contends that "all or a substantial portion" has reference and must be measured by application to all of the corporation's business or property wheresoever situated.

It is appellant's further contention that the 1939 amendment, which changed the words "all or a part of its assets" to "all or a substantial portion" of its assets, was designed to insure that the transferee would not be taxed unless a large enough portion of business to include "unity of use" value was transferred. Equally logical explanations may be en-

visioned. It is enough in this case to note that appellant has furnished no evidence that the full "unity of use" benefits do not accompany the transfer of all of Bethlehem Steel Company's California assets. In a suit for tax refund, the burden is upon plaintiff.

■ An analysis of the reorganization provisions in the act indicates that its purpose was primarily to prevent tax avoidance by using the method of shifting assets between corporations where the control and ownership of such assets remains *in statu quo*. The ultimate question as to whether a reorganization was accomplished by the transfer on December 31, 1949, rests upon the interpretation of the language used: "all or a substantial portion of the business or property of a . . . corporation," as used in said sections 13(h) and 13(j).

■ One of the many rules laid down in aid of statutory interpretation is that legislative intent should be gathered from the whole act and reconciled with reasonable application to carry out the policy and purpose of the legislation. (*Select Base Materials, Inc.* v. *Board of Equalization*, 51 Cal.2d 640 [335 P.2d 672]; *County of Alameda* v. *Kuchel*, 32 Cal.2d 193 [195 P.2d 17]; *Warner* v. *Kenny*, 27 Cal.2d 627 [165 P.2d 889].)

■ It is also true that ". . . where the occasion demands it 'the same words may have different constructions to effectuate the intention' of the act." (*Wall* v. *Board of Directors*, 145 Cal. 468, 473 [78 P. 951].) Therefore, any meaning attributed to "all or a substantial portion" or "reorganization" for other purposes, in other parts of the act, does not control here.

■ Of course, it is axiomatic that the purposes sought to be achieved and evils to be eliminated may have an important place in ascertaining legislative intent. (*California Drive-In Restaurant Assn.* v. *Clark*, 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028]; *Freedland* v. *Greco*, 45 Cal.2d 462 [289 P.2d 463].)

In the Summary Report of the California Tax Research Bureau (Appendix, Legislative Journal, 1933), with reference to section 13(h) and its purport, is made the following comment:

"The present provisions of section 13 relating to the computation of the taxes on banks or corporations which dissolve or withdraw from the State or which commence to do business

in the State make no exception in *the case of corporation reorganizations, consolidations or mergers.* Hence, simply because of a change in the corporate structure by which a business is operated, the amount of taxes due the State for the privilege of operating that business in a corporate form will vary from what it would have been otherwise. *Provision should be made for measuring the tax by the same income and allowing the same offsets had a reorganization, consolidation or merger not occurred.''* (Last emphasis added.)

This reference in dealing with the California franchise tax, which was the subject under study, obviously refers to California income from California property. Such interpretation of said section 13(h) appears reasonable and in accord with the legislative intent wherein it provides for continuity of taxation, where, as here, there is continuity of ultimate ownership. Clearly the reference in the report to ''measuring the tax by the same income'' refers to income from California business or property with which it is dealing in regard to California franchise tax measured by California net income from assets within this state. ▮ If the transferor company had, prior to the transfer, operated solely with the property and business so transferred, there could be no question but that the transfer would be a reorganization within the meaning of said section 13(h) and as respondent argues, ''the result should not be different simply because Bethlehem Steel Company also had business and property outside California which it did not transfer.''

While many of our tax laws are patterned after federal law and state courts are at times guided by federal court interpretations of similar tax laws (*San Joaquin Ginning Co.* v. *McColgan,* 20 Cal.2d 254 [125 P.2d 36]), we must be mindful that the federal tax is a direct tax on income dealing with the federal system applicable to all states, while our problem is a *franchise tax* measured by income from the preceding year and applicable to the state alone. The problem here is local and the statute under consideration was enacted for a purpose not common to both federal and state systems; consequently, our problem could not arise under the federal system.

▮ We conclude that the transaction of December 31, 1949, resulted in a ''reorganization'' pursuant to the provisions of the act and that the trial court in construing the act correctly determined that in order to give legal effect to the reorganization provisions, to be valid and operative for

the purpose for which they were enacted, the phrase "business or property" should be limited to California business or property.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 3, 1962.