[Civ. No. 21271. First Dist., Div. One. July 2, 1964.]

HEATING EQUIPMENT MANUFACTURING CO., Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

292

Heller, Ehrman, White & McAuliffe, Julian N. Stern and Jerry H. Robinson for Plaintiff and Appellant.

Bill Holden as Amicus Curiae on behalf of Plaintiff and Appellant.

Stanley Mosk, Attorney General, Ernest P. Goodman and John J. Klee, Jr., Deputy Attorneys General, for Defendant and Respondent.

SULLIVAN, J.—In this action for a refund of a portion of a franchise tax, plaintiff corporation appeals from a judgment in favor of defendant Franchise Tax Board.[1]

---

[1]Hereafter referred to as the board.

Plaintiff brought the instant action pursuant to section 26102 of the Revenue and Taxation Code[2] for a refund of a portion of the franchise tax paid by it for the taxable year commencing March 1, 1956, and ending February 28, 1957. Basically it claimed therein that it had duly prepaid its franchise tax for said taxable year, that it had been dissolved on December 11, 1956, that said dissolution was not pursuant to a reorganization, consolidation or merger as defined in section 23251, and that it was therefore entitled to a refund of 3/12ths of the amount of the prepayment.[3] The cause was tried in the court below on a written stipulation of facts, in addition to which there was testimony of one witness called by plaintiff.

We first set forth the stipulated facts: Plaintiff Heating Equipment Manufacturing Co. (hereafter referred to as Heating Equipment) was incorporated in the State of California in 1938 and engaged in the manufacture of various types of forced-air furnaces. Prior to October of 1956, the outstanding stock of Heating Equipment was owned 47 per cent by Frederick L. Anderson, 48 per cent by John M. Baeza, 3 per cent by members of Anderson's family, and 2 per cent by members of Baeza's family. Anderson was the president and general manager of Heating Equipment prior to its dissolution and liquidation.

San Carlos Manufacturing Co. (hereafter referred to as San Carlos) was incorporated in California in 1951 and engaged in the manufacture of various types of wall heaters. Prior to October of 1956 all of the outstanding stock of San Carlos was owned 50 per cent by Frederick L. Anderson and 50 per cent by John M. Baeza. Baeza was president and general manager of San Carlos prior to its dissolution and liquidation.

Pacific Industries, Inc. (hereafter referred to as Pacific

[2]Unless otherwise indicated, all code references hereafter are to the Revenue and Taxation Code.

Section 26102 provides: ''Except as provided in section 26103a, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed against it under this part is void in whole or in part may bring an action, upon the grounds set forth in its claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid.''

[3]Total franchise tax prepaid was in the sum of $11,121.10, of which plaintiff claimed refund in the sum of $2,780.28.

Industries) is a California corporation whose name was changed from Central Eureka Corporation on September 21, 1956.

In the spring of 1956 Pacific Industries commenced negotiations with Anderson and Baeza regarding the possibility of acquiring Heating Equipment and San Carlos. At or about the same time as these negotiations were being conducted, Pacific Industries was negotiating for the acquisition of other businesses through the issuance of its stock. Anderson and Baeza were informed of these other potential acquisitions during their negotiations with Pacific Industries.

On June 8, 1956, Pacific Industries entered into an agreement and plan of reorganization with the stockholders of Heating Equipment and San Carlos whereby Pacific Industries would issue shares of its common stock in exchange for all the outstanding stock of Heating Equipment and San Carlos.

Pursuant to paragraph 8 of the agreement and plan of reorganization, Anderson and Baeza, through their attorneys, requested a ruling from the Internal Revenue Service as to the income tax consequences of the contemplated exchange of stock, it being the position of Heating Equipment, San Carlos and the stockholders thereof, that the exchange constituted a tax-free plan of reorganization under sections 354(a)(1) and 368(a)(1)(B) of the 1954 Internal Revenue Code.[4]

The Internal Revenue Service ruled that the acquisition by Pacific Industries of all the stock of Heating Equipment and of all the stock of San Carlos solely for voting stock of Pacific Industries constituted a reorganization within the meaning of section 368(a)(1)(B) of the Internal Revenue Code and that no gain or loss would be recognized to the stock-

---

[4] 26 U.S.C.A. § 354(a)(1) provides: "(a) General rule.—(1) In general.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

26 U.S.C.A. § 368(a)(1)(B) provides: "(a) Reorganization.—(1) In general.—For purposes of parts I and II and this part, the term 'reorganization' means—

"· · · · · · · · · · · · ·

"(B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition)."

holders of Heating Equipment or San Carlos under section 354(a)(1) of the same code.

Thereafter, on October 9, 1956, Pacific Industries, pursuant to the agreement and plan of reorganization above referred to, issued 2,000,000 shares of its stock in exchange for all the outstanding stock of Heating Equipment and San Carlos, 1,000,000 of said shares being in exchange for all the outstanding stock of Heating Equipment and 1,000,000 shares being in exchange for all the outstanding stock of San Carlos.

On or about October 17, 1956, the directors of Pacific Industries elected to dissolve and liquidate Heating Equipment and San Carlos.

On October 24, 1956, the board of directors of Heating Equipment and the board of directors of San Carlos, pursuant to the consent of Pacific Industries, the sole shareholder of both companies, resolved to wind up and dissolve the corporations and to this end, adopted plans of liquidation whereby all the assets of Heating Equipment and San Carlos would be distributed to Pacific Industries and the stock of Heating Equipment and San Carlos would be cancelled. On October 26, 1956, both San Carlos and Heating Equipment filed a notice of intent to wind up and dissolve with the Secretary of State.

On October 31, 1956, all of the assets of Heating Equipment and San Carlos were transferred to Pacific Industries in liquidation and the stock of Heating Equipment and San Carlos was cancelled. Formal final certificates of winding up and dissolution were filed with the Secretary of State on December 11, 1956.

Prior to the exchange of stock heretofore described, the stockholders of Heating Equipment and San Carlos held no interest in Pacific Industries, and Pacific Industries or its stockholders held no interest in Heating Equipment or San Carlos.

The 1,000,000 shares of Pacific Industries stock received by Anderson and his family constituted 14 per cent of the then outstanding stock of Pacific Industries. Similarly, the 1,000,000 shares of Pacific Industries stock received by Baeza and his family constituted 14 per cent of the then outstanding stock of Pacific Industries.

Subsequent to October of 1956, Pacific Industries acquired a number of other businesses resulting by the end of March 1957 in the reduction of the interests of the Anderson and

Baeza families in Pacific Industries to 9.05 per cent of its outstanding stock.

After the liquidations of October 31, 1956, Heating Equipment and San Carlos were operated as divisions of Pacific Industries. Anderson and Baeza were made vice presidents of Pacific Industries. Anderson being named general manager of Heating Equipment Division and Baeza being named general manager of San Carlos Division.

Neither Anderson nor Baeza were candidates for the board of directors of Pacific Industries at the annual meeting in March 1957, but were elected to the board at a meeting held in June of 1957. The board of directors then consisted of 11 members. None of the members of the board of directors were nominees of Anderson or Baeza.

Heating Equipment timely filed its California Bank and Corporation Franchise Tax Return for its taxable fiscal year beginning March 1, 1956, and paid the tax due thereon in the sum of $11,121.10.

On January 16, 1957, plaintiff, Heating Equipment, filed a claim for refund of tax in the amount of $2,780.28 (being three-twelfths of $11,121.10), alleging said sum to be refundable pursuant to section 23332.[5] The defendant denied the claim for refund by sending notice thereof to the plaintiff dated June 12, 1957. On September 6, 1957, plaintiff filed an appeal with the State Board of Equalization, and the appeal was heard on April 8, 1958. On November 14, 1960, the State Board of Equalization affirmed defendant's denial of the claim for refund and gave notice thereof to plaintiff.[6]

---

[5]In 1957 section 23332 of the Revenue and Taxation Code provided in part: ''[A]ny taxpayer which is dissolved or withdraws from the State during any taxable year shall pay a tax only for the months of the taxable year which precede the effective date of such dissolution or withdrawal, according to or measured by (a) the net income of the preceding income year or (b) a percentage of net income determined by ascertaining the ratio which the months of the taxable year, preceding the effective date of dissolution or withdrawal, bears to the months of the income year, whichever is the lesser amount. . . . and provided further, that the taxes levied under this chapter shall not be subject to abatement or refund because of the cessation of business or corporate existence of any taxpayer pursuant to a reorganization, consolidation, or merger.'' On May 24, 1961, the last line of the above quoted section was amended by the addition of the phrase ''as defined by section 23251.''

[6]Defendant advises us in its brief that San Carlos made no claim for refund since its dissolution occurred at the end of its fiscal taxable year.

In addition to the foregoing stipulated facts, plaintiff called Donald Smith, president, general manager and director of Pacific Industries during the period of time here material. Mr. Smith was the sole witness at the trial. He testified, over defendant's objection, that he personally negotiated the arrangements between Pacific Industries and Heating Equipment in order to diversify; that Pacific Industries wanted the assets of Heating Equipment in order to strengthen its earning capacity; that it was not interested at all in acquiring the stock of Heating Equipment; that it intended to liquidate the latter corporation and "merged the assets into the assets of Pacific Industries"; and that it never intended to operate Heating Equipment as a wholly owned subsidiary.

Smith further testified that after Pacific Industries acquired the physical assets of Heating Equipment certain changes were made in operations of both Heating Equipment's plant and San Carlos' plant, accounting and fiscal procedures were consolidated with those of Pacific Industries and certain activities formerly carried on by Heating Equipment were transferred out of the Heating Equipment Division of Pacific Industries. Although Frederick Anderson was named general manager of the Heating Equipment Division, Pacific Industries' board of directors was responsible for policy making with respect to the operations of such division. Approximately four months after acquiring Heating Equipment assets, Pacific Industries transferred Anderson to its head office where he was put in charge of liquidating into Pacific Industries' business other assets not connected with those of Heating Equipment.

The trial court concluded that "[t]he acquisition of plaintiff Heating Equipment Manufacturing Company by Pacific Industries was a 'reorganization, consolidation, or merger,' within the meaning of Revenue and Taxation Code section 23332."

The present controversy revolves about sections 23251 and 23332. As we have pointed out (see footnote 5, *ante*) the latter section at all times here relevant prohibited any abatement or refund of franchise tax "because of the cessation of business or corporate existence of any taxpayer pursuant to a reorganization, consolidation, or merger." While the trial court decided that plaintiff was not entitled to a refund because the transaction involved was a reorganization, consolidation or merger, the record before us fails to disclose the

basis of the court's conclusion. It is noteworthy that the conclusions of law do not indicate in which category or categories of reorganization specified in section 23251 the transaction falls and indeed make no mention of section 23251 at all.

Section 23251 as in effect in 1956 at the time the present controversy arose, provided: "The term 'reorganization' as used in this chapter means (a) a transfer by a bank or corporation of all or a substantial portion of its business or property to another bank or corporation if immediately after the transfer the transferor or its stockholders or both are in control of the bank or corporation to which the assets are transferred; or (b) a mere change in identity, form or place of organization however effected; or (c) a merger or consolidation; or (d) a distribution in liquidation by a bank or corporation of all or a substantial portion of its business or property to a bank or corporation stockholder, and the bank or corporation stockholder continues all or a substantial portion of the business of the liquidated bank or corporation. As used in this section the term 'control' means the ownership of at least 80 percent of the voting stock and at least 80 percent of the total number of shares of all other classes of stock of the bank or corporation."[7]

It is plaintiff's position before us that the transactions here in controversy, involving an exchange of stock followed by liquidation of the acquired corporation, do not constitute a reorganization within the meaning of section 23251 but are in substance the acquisition of assets in exchange for stock. It is defendant's position, on the other hand, that such transactions even when considered as a whole constitute a reorganization as defined by both subdivisions (c) and (d) of section 23251. In sum, we face a single crucial issue: whether the transactions involved constitute a reorganization within the meaning of the above statute.

We first consider whether the transactions referred to are a merger or consolidation within the meaning of subdivision (c) of section 23251.

Section 23251 defining "reorganization" is based upon former section 13(j) of the Bank and Corporation Franchise Tax Act. The language of section 13(j) was largely borrowed

---

[7]Sections 23251 and 23332 are both found in chapter 2 (entitled The Bank and Corporation Franchise Tax) of part 11 of division 2 of the Revenue and Taxation Code.

from section 112 of the Revenue Act of 1928 (45 Stat. 791) which defined "reorganization" for the purpose of recognition of gain or loss under the federal income tax law.[8] The definition of "reorganization" incorporated in section 13 of the California act at the time of its revision in 1933 (Stats. 1933, pp. 696, 697) was apparently borrowed word for word from subdivisions (B), (C) and (D) of the federal statute. (See footnote 8, *ante.*) By amendments in 1937 (Stats. 1937, pp. 2331, 2333-2334) this definition was included in subdivision (j) of section 13 of the California act at which time there was added to the definition the following: "or (4) a merger or consolidation." It is to be noted that this addition was in reality subdivision (A) of the federal statute without the language appearing therein in parentheses. By amendment in 1939 (Stats. 1939, pp. 2946, 2948-2949) the term "a recapitalization" was removed from the definition of reorganization in section 13(j), the subdivisions renumbered, and the following added: "or (4) a distribution in liquidation by a bank or corporation of all or a substantial portion of its business or property to a bank or corporation stockholder." The resulting statute eventually became section 23251 as in effect in 1956 and set forth by us above.[9]

In *San Joaquin Ginning Co.* v. *McColgan* (1942) 20 Cal.2d 254 [125 P.2d 36], the court faced the task of construing section 13(j) of the Bank and Corporation Franchise Tax Act, as amended in 1937. The plaintiff there had become the wholly owned subsidiary of another California corporation

[8]Section 112(i)(1) of the Revenue Act of 1928 in relevant part provided: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected."

[9]After its inclusion in the Revenue and Taxation Code in 1949, § 23251 was amended in 1951 and 1953. It was subsequently amended in 1957 by adding after the word liquidation in subd. (d) the following: "(other than a distribution to which section 24504(b)(2) applies)." (Stats. 1957, p. 1602, effective May 30, 1957, and thus *after* the taxable year here involved.)

which had purchased all its stock for cash. Thereafter upon the vote of the parent corporation, San Joaquin elected to dissolve and turned over to the parent company all of its remaining property and assets in return for the stock of the subsidiary which was thereupon cancelled. Such property was then used by the parent corporation in the conduct of the same business operations formerly conducted by the subsidiary. Plaintiff San Joaquin then claimed a refund of that portion of the franchise tax paid by it for the months following dissolution upon the theory that the liquidating transaction was nothing more than a dissolution and distribution of assets. Defendant Franchise Tax Commissioner contended that it amounted to a reorganization as defined by subsection (3) ("a mere change in identity, form or place of organization however effected"—now § 23251, subd. (b)) or subsection (4) ("a merger or consolidation"—now § 23251, subd. (c)) of section 13 (j) of the former act.

The court there held that "[t]he rule to be applied in the interpretation of the terms reorganization, merger and consolidation in relation to exemptions, abatements and refunds in the taxing provisions is the rule of liberal construction." (P. 259.) Applying this rule of construction the court sustained the commissioner's contention that the transaction amounted to a reorganization and reversed the judgment allowing a refund.

In respect to the first subsection (§ 13(j)(3)) the court observed that the plaintiff San Joaquin in order to sustain its claim for the refund, was required to show that the change consequent upon a statutory dissolution and liquidation "was in reality a change of substance as well as of form." (P. 259.) If only of *form*, there would be a reorganization within the meaning of the statute thus precluding a refund, since the statute provided that a reorganization included a mere change in identity, form or place of organization "however effected."

In respect to the second subsection there involved (§ 13(j) (4)) the court stated: "Also, in conformity with the legislative purpose, consolidation or merger as a form of reorganization is not restricted to statutory consolidation or merger in the absence of appropriate language of limitation." (P. 260.) Recognizing that the statute then before it had been adopted in part from section 112 of the Revenue Act of 1928 (see footnote 8, *ante*), the court reviewed a number of fed-

eral cases which determined whether certain transactions constituted a "reorganization" as defined by the federal statute for the purpose of recognition of gain or loss. From such review the court reached these conclusions: that such cases lent further support to a rule of liberal construction in determining what is a reorganization, consolidation or merger; "that a disposition or distribution of assets in liquidation or dissolution proceedings may be a reorganization, consolidation or merger" (p. 260); and that the failure of the California Legislature to adopt the parenthetical phrase of clause (A) of section 112 of the Revenue Act of 1928 (see footnote 8, *ante*) when in 1937 it added "merger or consolidation" to the definition of reorganization (§ 13(j)(4) of the former act, now § 23251, subd. (c)) did not "impel a conclusion that it was the legislative intention to exclude elements of a de facto merger or consolidation from the meaning of reorganization." (Pp. 262-263.) The court was of the view that the appropriate rule of interpretation "requires a holding that the language as adopted was sufficiently broad to include as a reorganization any transaction which did not substantially change the continuity of interest." (P. 263.) In ordering a reversal, it noted that "the continuity of interest after dissolution and so-called liquidation is beyond question. The same interests were represented in fact, if not in form, by the same stockholders before and after the transfer." (P. 263.)

While the instant case, unlike *San Joaquin,* does not involve subdivision (b) of section 23251, it does involve, as that case did, the question whether the transactions in controversy are "a merger or consolidation" within subdivision (c) of the statute. Since it is not argued here that there was a consolidation, our inquiry actually narrows to whether there was a merger.[10]

*San Joaquin* established that a merger as a form of reorganization under the statute here involved is not restricted to a statutory merger in the absence of appropriate lan-

---

[10]It is convenient to note at this point that the board contends that the transactions considered as a whole constitute a merger. Although here as in *San Joaquin* all of the assets of the wholly owned subsidiary (Heating Equipment) were on its dissolution transferred to the parent (Pacific Industries), defendant board does not argue that this part of the transaction should be considered alone and that it therefore falls within the holding of *San Joaquin*.

guage of limitation but includes a de facto merger as well. █ Generally speaking a merger is the absorption of one corporation by another which survives, retains its name and corporate identity together with the added capital, franchises and powers of the merged corporation and continues the combined business. (15 Fletcher, Cyclopedia Corporations (1961) § 7041, p. 9; 1 Ballantine & Sterling, California Corporation Laws (4th ed. 1963) p. 565.) "A merger ordinarily is an absorption by one corporation of the property and franchises of another whose stock it has acquired. The merged corporation ceases to exist, and the merging corporation alone survives." (*Cortland Specialty Co.* v. *Commissioner of Internal Revenue* (2d Cir. 1932) 60 F.2d 937 939, cert. denied 288 U.S. 599 [53 S.Ct. 316, 77 L.Ed. 975]; *Fisher* v. *Commissioner of Internal Revenue* (6th Cir. 1939) 108 F.2d 707, 709.)

As the Supreme Court observed in *San Joaquin,* federal cases determining what constituted a reorganization for purposes of nonrecognition of gain or loss under the then applicable federal revenue act from which the California franchise tax statute defining reorganization was adopted,[11] have generally held that a disposition or distribution of assets in liquidation or dissolution proceedings may be a reorganization, consolidation or merger. Thus it was held under the federal act that while the mere purchase for money of the assets of one corporation by another did not amount to a reorganization (*Pinellas Ice & Cold Storage Co.* v. *Commissioner of Internal Revenue* (1933) 287 U.S. 462, 470 [53 S.Ct. 257, 77 L.Ed. 428, 433]), a merger or consolidation occurred where the seller acquired an interest in the affairs of the purchasing company which was definite and substantial and represented a material part of the value of the thing transferred. (*John A. Nelson Co.* v. *Helvering* (1935) 296 U.S. 374, 377 [56 S.Ct. 273, 80 L.Ed. 281, 283]; *Helvering* v. *Minnesota Tea Co.* (1935) 296 U.S. 378, 385-386 [56 S.Ct. 269, 80 L.Ed. 284, 288-289]; *Pinellas Ice & Cold Storage Co.* v. *Commissioner of Internal Revenue, supra.*) Inherent in the concept of reorganization articulated by the federal act was "some continuity of interest on the part of the transferor corporation or its

[11]The federal statute was originally § 203(h)(1) of the 1926 Revenue Act which became § 112(i)(1) of the Act of 1928 from which § 13(j) of the California Bank and Corporation Franchise Tax Act was patterned.

stockholders" in the properties transferred. (*Cortland Specialty Co.* v. *Commissioner of Internal Revenue, supra,* 60 F.2d 937, 940.) The fact that the relationship of the taxpayer to the assets conveyed was substantially changed; that the transferor did not participate in the management of the purchaser; that the transferor did not acquire a controlling interest in the transferee company; or that the transferor while having a substantial interest therein, was denied voting rights did not prevent the transaction from being a merger or consolidation. (*John A. Nelson Co.* v. *Helvering, supra; Helvering* v. *Minnesota Tea Co., supra.*) It is to be noted that the Supreme Court did not define with precision what it meant by "definite and substantial interest" or "a substantial part of the value of the thing transferred" as those phrases are used in *John A. Nelson Co.* v. *Helvering, supra,* and *Helvering* v. *Minnesota Tea Co.* In *Miller* v. *Commissioner of Internal Revenue* (6th Cir. 1936) 84 F.2d 415, 418, it was said that " [i]n the commonly accepted legal sense, a substantial interest is something more than a merely nominal interest, and, in respect to corporations, a definite and material interest is an interest beyond what is usually referred to as represented by 'qualifying shares.' "

In summary, the federal statute was satisfied where the transferor retained a substantial stake in the enterprise and such a stake was thought to be retained where a large proportion of the consideration was in common stock of the transferee. (*Letulle* v. *Scofield* (1940) 308 U.S. 415, 420 [60 S.Ct. 313, 84 L.Ed. 355, 359-360]; *Commissioner of Internal Revenue* v. *Segall* (6th Cir. 1940) 114 F.2d 706, 708, cert. denied 313 U.S. 562 [61 S.Ct. 838, 85 L.Ed. 1522].) A reorganization existed within the purpose and meaning of the statute "where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, . . ." (*Groman* v. *Commissioner of Internal Revenue* (1937) 302 U.S. 82, 89 [58 S.Ct. 108, 82 L.Ed. 63, 67].)

■ In the instant case the stockholders of plaintiff received 1,000,000 shares of Pacific Industries stock in exchange for all outstanding stock of Heating Equipment. As a result the stock of Pacific represented the entire consideration moving to the stockholders of Heating for their shares in the latter corporation and in effect for the assets and properties of such corporation which Pacific thereupon acquired

and absorbed. According to the stipulation of the parties, Heating's former stockholders thereby acquired a 14 per cent stock ownership interest in Pacific. Applying the authorities set forth above, we are satisfied that there was a continuity of interest on the part of the stockholders of the transferor corporation in the property and assets transferred, that such stockholders retained an interest in the affairs of the purchasing company which was definite, substantial and manifestly in excess of a mere nominal interest, and that the interest thus acquired by them clearly represented a material part of the value of the transferred assets. We are therefore of the view that the transactions in controversy, possessing the requisite elements and characteristics of a merger and reorganization under the former federal act and the federal cases interpreting it,[12] constituted a merger and reorganization within the scope and purpose of the California statute which was patterned after the federal legislation.

 Plaintiff contends that the transactions here involved did not constitute a merger and hence a reorganization within section 23251 since the ownership and control of Heating's assets were substantially changed as a result of their acquisition by Pacific. Plaintiff grounds its argument on an analysis of the four decisions of California appellate courts which have dealt with section 23251: *San Joaquin Ginning Co.* v. *McColgan, supra,* 20 Cal.2d 254; *Great Western Power Co.* v. *McColgan* (1942) 20 Cal.2d 896 [125 P.2d 42]; *Bethlehem Pacific Coast Steel Corp.* v. *Franchise Tax Board* (1962) 203 Cal.App.2d 458 [21 Cal.Rptr. 707]; *Andersen-Carlson Mfg. Co.* v. *Franchise Tax Board* (1955) 132 Cal.App.2d 825 [283 P.2d 278]. The gist of the argument is this: The uniform test to be distilled from these decisions, says plaintiff, is "whether the ownership and control of the acquired assets is substantially the same after the transaction as it was before." The purpose of the statute was to provide for a continuing taxable entity only where the same business continues to be owned and operated by the same interests. Therefore, so the argument goes, there cannot be a merger

---

[12]It is to be noted that the federal precedents discussed supra and adverted to by the court in the *San Joaquin* case dealt with reorganization as defined by the Revenue Acts of 1926 and 1928 (see footnote 11, *ante*) both of which contained the phrase "merger or consolidation" (see footnote 8, *ante*). This definition was changed by the Revenue Act of 1934 which in section 112 (g)(1) revised paragraph (A) to read "a *statutory* merger or consolidation." (Italics added.)

within the meaning of the statute if there is a substantial change of ownership and control.

We have already summarized the *San Joaquin* case pointing out that the court there found that the transactions involved constituted a reorganization within both subsections (3) and (4) of section 13(j) of the Bank and Corporation Franchise Tax Act then in effect, said subsections being the predecessors of subdivisions (b) and (c) respectively of section 23251. The *Great Western Power* case, *supra,* decided on the same day as *San Joaquin* presented a factual situation almost identical to that of *San Joaquin* and was decided in favor of the Franchise Tax Commissioner on the basis of *San Joaquin.* Presumably this case also involved the statutory predecessors to subdivisions (b) and (c) of section 23251. In the *Bethlehem* case, supra, one of two wholly owned subsidiaries transferred all of its California assets to the other. It was held that this constituted a reorganization since, the statute being applicable to California property or business only, there had been a transfer of "all or a substantial portion" of the transferor subsidiary's business or property, the parent corporation (Bethlehem Steel Corporation of Delaware) still retaining control of the transferred property by reason of its ownership of all the ·stock of the transferee. Obviously *Bethlehem* held that a reorganization occurred within the statutory predecessor to subdivision (*a*) of section 23251.

While plaintiff concedes that the foregoing three cases "properly" held that there was a reorganization as defined by section 23251, it neglects to indicate under which subdivisions of the statute or its predecessor, the particular reorganization was determined to fall. *San Joaquin* (and its companion case *Great Western Power* which we need not consider separately) posited reorganization on the predecessors to both subdivisions (b) and (c) of section 23251. Yet it is noteworthy that plaintiff here relies heavily on that portion of the court's opinion which states that the plaintiff in that case in order to prevail in its claim for refund was required to show that the change effected by the transactions there involved was in reality a change of substance as well as of form. (See 20 Cal.2d 254, 259.) As we have explained *supra,* this language relates to the determination whether there was a reorganization as defined by the predecessor to subdivision (*b*) of section 23251. That subdivision is not involved in the

case at bench. Plaintiff's argument that no claim can be made here that there was "a mere change in identity, form or place of organization," for the reasons that the two corporations involved (Heating Equipment and Pacific Industries) had previously been entirely unrelated, that the aggregate interest of Heating's stockholders in the transferred assets was reduced from 100 per cent to 14 per cent, and that such stockholders no longer had control, is therefore of no avail and indeed beside the point. ██ ██ The test of mere change in form without a substantial change in business operations or interests is applicable to determine whether a reorganization has occurred within the meaning of subdivision (b) of section 23251 (cf. *San Joaquin Ginning Co.* v. *McColgan, supra,* 20 Cal.2d 254; *Great Western Power Co.* v. *McColgan, supra,* 20 Cal.2d 896) just as the test of transfer of all or a substantial portion of corporate business or property followed by control on the part of the transferor or its stockholders is applicable to determine whether a reorganization has occurred within the meaning of subdivision (a) of section 23251 (*Bethlehem Pacific Coast Steel Corp.* v. *Franchise Tax Board, supra,* 203 Cal.App.2d 458). ██ Contrary to plaintiff's claim, none of these three cases hold that the above tests are applicable to determine whether a reorganization has occurred within the meaning of subdivisions (c) and (d) and that there is one test uniformly applicable to all subdivisions of the statute—whether, as plaintiff would have it, the ownership and control of the acquired assets is the same after the transaction as it was before.

Nor does the fourth case to which plaintiff refers, *Andersen-Carlson Mfg. Co.* v. *Franchise Tax Board, supra,* support such a uniform test. Plaintiff in that case and Rome Cable Corporation, an unrelated company which was its creditor, had entered into a contract providing for loans by Rome to the plaintiff and for the giving of an option by plaintiff to Rome to purchase all the plaintiff's assets. The agreement provided that the purchase price therefor would be the assumption by Rome of all of plaintiff's liabilities, the cancellation of plaintiff's indebtedness to Rome, and the issuance to plaintiff of a certain number of shares of Rome's stock. Approximately 15 months after the contract was made Rome gave notice of intention to exercise its option. Approximately three months later, plaintiff transferred substantially all of its assets to Rome and Rome delivered to plaintiff 27,500

shares of the latter's stock which represented less than 7 per cent of its shares outstanding. Plaintiff thereupon distributed the Rome shares to its own stockholders pro rata. From the date of the transfer, Rome operated the plant acquired from the plaintiff without any basic change in the former personnel. Approximately three months after the transfer, Andersen-Carlson dissolved. In affirming a judgment for refund of franchise taxes on the basis that there was no reorganization, the court stated that "[t]here is nothing in the stipulated facts herein which would justify a conclusion that the contract made between the two corporations, more than a year before the dissolution, was not a bona fide contract providing for the outright sale of plaintiff's assets. As a result of the transfer of assets and the dissolution, there was a substantial change in the business operations and the interests involved." (132 Cal.App.2d at p. 829.)

It would appear that the court's observation as to "substantial change" refers to a form or reorganization based upon a mere change in form without a substantial change in the business operations or interests transferred. (See § 23251, subd. (b).) Although the lower court was upheld in its conclusion that there was no reorganization, consolidation or merger at all, the opinion does not disclose to what, if any, extent a reorganization under the predecessor statute to section 23251, subdivision (c), was assertible or even asserted, which is the issue here confronting us. *Andersen* is distinguishable on its facts from the case at bench. It did not involve, as the instant case does, merely an exchange of stock followed by liquidation of the acquired corporation. At the time of the original contract a debtor-creditor relationship existed between the parties and by the terms of the contract arrangements were made between them for additional loans of a very substantial amount. As part of this arrangement, the lending corporation was given the option to purchase assets above described. This was clearly a mechanism reserved by the lender to protect its position as creditor and ultimately if it so desired, to settle or otherwise adjust its relationship with its debtor. The opinion in *Andersen* does not disclose whether the details of the transaction would support the application of the principles announced in *Helvering* v. *Minnesota Tea Co., supra,* 296 U.S. 378 [56 S.Ct. 269, 80 L.Ed. 284], and the related cases cited by us *supra.* It may well be that the facts did not. We find a significant

distinction between *Andersen* and the instant case in the debtor-creditor relationship between the parties and we feel that the court there could have very well concluded that the ultimate transaction was merely incidental to such relationship and did not derogate from the good faith of the arrangement thus availed of by the creditor. At any rate, we apprehend in *Andersen* no rule declaring that a reorganization within subdivision (c) of section 23251 is to be determined by the same criteria as one within subdivisions (a) or (b) of said section.

Plaintiff presents three arguments to support its proposition that a construction of section 23251, which includes the present transaction within the terms of such statute, is entirely unjustified. We consider them in the order presented.

■ First it is argued that the words which would have precisely covered the present transaction were consciously omitted by the Legislature when it adopted the statute from the federal revenue act. This refers to the parenthetical phrase of clause (A) appearing in former section 112 of the Revenue Act of 1928. (See footnote 8, *ante*.) This same argument was made to and rejected by the court in *San Joaquin Ginning Co.* v. *McColgan, supra,* 20 Cal.2d 254, 262-263.[13] As we have explained, the court in *San Joaquin* held in effect that de facto mergers came within the section.

■ Secondly, plaintiff claims that a comparison of section 23251 with section 24562, which defines reorganization for gain or loss purposes, indicates that the transaction here involved is not a reorganization within section 23251. The argument runs as follows: The present transaction clearly falls within section 24562, subdivision (a)(3)[14]; this parti-

---

[13]In *San Joaquin* the court said: ''It is true that the California Legislature did not adopt the language of the parenthetical phrase of clause (A) of the federal definition. The omission of an express declaration that merger or consolidation should include the transfer by one corporation to another of its voting stock or properties does not impel a conclusion that it was the legislative intention to exclude elements of a de facto merger or consolidation from the meaning of reorganization.'' (Pp. 262-263.)

[14]Section 24562, subdivision (a)(3), provides: '' (a) For purposes of chapters 8 and 9 and this chapter, the term 'reorganization' means— ... (3) The acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another cor-

cular provision however is nowhere contained in section 23251; both sections 23251 and 24562 "were patterned after the same federal definition"; therefore the omission of the above provision from section 23251 "is especially significant as an expression of legislative intent to exclude the acquisition of assets in exchange for stock" which is the instant transaction. We are not impressed with the argument. As plaintiff itself appears to concede, the above sections set forth two separate definitions of "reorganization" for two different tax purposes. It appears to us to be illogical to argue that because a given transaction falls within section 24562 for gain and loss purposes, it is perforce excluded from section 23251 for franchise tax purposes. Each section sets forth separate and independent criteria to measure a transaction for the purpose proper thereto. Furthermore, while both sections may have had their genesis in the same federal legislation, it seems obvious from a comparison of them that California followed a legislative eclecticism in constructing an appropriate yardstick in each case and thus not providing for a uniform statutory result.[15] We do not find the general coinci-

poration, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded.''

[15]Though §§ 23251 and 24562 of the Rev. & Tax. Code are both ''patterned after the same federal definition,'' that is the term ''reorganization'' as originally defined in section 112(i) of the Revenue Act of 1928 (see fn. 8, *ante*), still the above sections differ markedly in their statutory evolution. Thus the predecessor of § 24562 (§ 20 of the Bank and Corporation Franchise Tax Act) contained the federal statutory definition of ''reorganization'' as early as 1929 when the Franchise Tax Act was first enacted. (Stats. 1929, ch. 13, § 20, subd.(g), p. 27.) However the term ''reorganization'' was not defined in the predecessor of § 23251 (§ 13 of the Franchise Tax Act) until that section was amended in 1933 (Stats. 1933, ch. 210, § 5, p. 696; ch. 303, § 6, p. 872). While § 13 as amended in 1933 did not include the ''merger and consolidation'' clause of § 112(i)(1)(A) it did include in separate paragraphs provisions for the payment of the tax by ''merged'' or ''consolidated'' corporations.

Section 112 of the Revenue Act of 1934 saw a change in the definition of ''reorganization.'' Thus former subd. (A) was in effect expanded in the 1934 Act into two subdivisions, (A) and (B), that section thereafter reading in part: ''The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or

dence between them that plaintiff claims to exist nor such an identity prevailing in respects other than that singled out as to compel the conclusion that the type of transaction here present was purposely withheld from the operation of section 23251.

■ Finally plaintiff argues that when the Legislature amended section 23332 in 1961 by expressly incorporating therein the definition of reorganization found in section 23251, it approved the judicial interpretation of the latter section in the *Andersen-Carlson* case. (See footnote 5, *ante.*) But, as we have explained, *Andersen-Carlson* is distinguishable on its facts from the instant case and is not here controlling. Furthermore the 1961 amendment relied on by plaintiff seems to us to be merely of a technical or clarifying nature and, in our view, does not warrant the conclusion that the Legislature must have reviewed all the case law and approved the "uniform rule" which plaintiff claims to find in the *Andersen-Carlson* case.

■ We therefore conclude that the transaction before us constitutes a reorganization as defined in subdivision (c) of section 23251. In view of this conclusion, we deem it unnecessary to decide whether, as the board argues, the judgment of

of substantially all the properties of another corporation." This change was reflected in § 20 of the Franchise Tax Act by an amendment in 1935 (Stats. 1935, ch. 275, § 14, p. 974) which incorporated by reference the 1934 Revenue Act. Section 13 was also amended in 1935 (Stats. 1935, ch. 275, § 9, p. 967), but the definition of "reorganization" remained substantially the same without incorporating subdivisions (A) and (B) of the federal statute.

Finally in 1937 § 20 was amended and the definition of "reorganization" of the Revenue Act of 1936 (substantially the same as that of the 1934 Act) was incorporated therein by reference. (Stats. 1937, ch. 19, § 2, p. 86.) Section 13 was also amended in 1937 and to the definition of "reorganization" there were added the words "or (4) a merger or consolidation." (Stats. 1937, p. 2331.)

It is to be noted that the Legislature in adding these words to § 13 did not abstract them from the federal statute then in force. As pointed out above, the 1936 Revenue Act defined a reorganization in part as a "*statutory* merger or consolidation." (Italics added.) By deliberately excluding the limiting adjective "statutory" before the nouns "merger" and "consolidation" it is clear that the Legislature intended that this subdivision possess a broader scope than its federal counterpart and hence inferably embrace within its terms de facto mergers such as that in the case at bar. (Cf. *San Joaquin Ginning Co.* v. *McColgan, supra,* 20 Cal.2d 254, 262; see 1 C.C.H. California State Tax Reporter, par. 10-250a, p. 639.)

the trial court can be sustained on the additional ground that the present transaction constitutes a reorganization as defined in subdivision (d) of the statute.

Our conclusion herein at the same time disposes of plaintiff's argument that the transaction, viewed as a whole, is in substance an acquisition of assets rather than a reorganization. In its opening brief plaintiff, relying on the trial court's finding[16] that Pacific Industries at all relevant times intended to obtain the assets of Heating Equipment by liquidating the latter corporation, invokes the so-called *Kimbell-Diamond* rule. (*Kimbell-Diamond Milling Co.* v. *Commissioner of Internal Revenue* (1950) 14 T.C. 74.) This rule deals with the acquisition of assets of another corporation by the *purchase* of its stock. In *United States* v. *Mattison* (9th Cir. 1959) 273 F.2d 13, 17, cited by plaintiff, the court explained the rule in the following language: "There is, however, an established exception to the rule giving effect to liquidating distributions, which is known as the Kimbell-Diamond rule. Under this doctrine, when a taxpayer who is interested primarily in a corporation's assets first *purchases* the stock and then liquidates the corporation in order to acquire the desired assets, the separate steps taken to accomplish the primary objective will be treated as a single transaction. Thus, even though the objective was accomplished in form by a purchase of stock, the substance of the transaction is a purchase of property. [Footnote omitted]." (Italics added.) This rule has been codified in California. (Rev. & Tax. Code, § 24504, subd. (b)(2). Cf. 26 U.S.C.A. § 334(b)(2); see 3A Mertens, Law of Federal Income Taxation, § 21.167.) Clearly in the instant case Pacific Industries did not acquire the stock of Heating Equipment by purchase but in a stock for stock exchange as a tax-free reorganization under the Internal Revenue Code, as the court also found.[17]

---

[16]The pertinent finding of fact states: "That at the time of the execution of the agreement and plan of reorganization dated June 8, 1956 and at all times thereafter it was the intent of Pacific Industries to liquidate and dissolve Heating Equipment upon acquiring its stock and to thereby acquire the physical assets of Heating Equipment."

[17]The pertinent finding of fact states: "That at the time of the execution of the agreement and plan of reorganization, dated June 8, 1956, all parties to the agreement intended that Pacific Industries would acquire Heating Equipment and San Carlos in a stock for stock exchange as a tax-free reorganization under the above-mentioned revenue code sections."

It is interesting to note that none of the cases cited by plaintiff[18] in its opening brief as illustrative of the *Kimbell-Diamond* rule involve a situation, as in the instant case, where the stockholders of the transferor corporation retained a definite and substantial interest in the affairs of the acquiring corporation. (See *Helvering* v. *Minnesota Tea Co., supra,* 296 U.S. 378 [56 S.Ct. 269, 80 L.Ed. 284].)

In plaintiff's closing brief the real thrust of its argument on the *Kimbell-Diamond* rule becomes apparent. Here plaintiff attempts to employ the argument in support of its position that the present transaction is not a reorganization within subdivision (d) of section 23251. It is urged that subdivision (d) is not applicable since under "the broad step transaction doctrine" (of which plaintiff claims the *Kimbell-Diamond* case is only one application) the liquidation of Heating Equipment attained no independent significance but was merely one step in an overall transaction pursuant to which Pacific acquired the assets of Heating in exchange for its stock. However since we sustain the trial court's judgment under section 23251, subdivision (c), we need not pass upon plaintiff's claim that the application of the step transaction principles preclude the operation of subdivision (d).

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

---

[18]Plaintiff cites therein the following: *Commissioner of Internal Revenue* v. *Ashland Oil & Refining Co.* (6th Cir. 1938) 99 F.2d 588, cert. denied, 306 U.S. 661 [59 S.Ct. 786, 790, 83 L.Ed. 1057]; *United States* v. *Mattison, supra,* 273 F.2d 13; *United States* v. *M.O.J. Corp.* (5th Cir. 1960) 274 F.2d 713; *Estate of James F. Suter* (1957) 29 T.C. 244.