[L. A. No. 17846.   In Bank.   Apr. 29, 1942.]

SAN JOAQUIN GINNING COMPANY (a Corporation), Respondent, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Appellant.

Earl Warren, Attorney General, and H. H. Linney and Valentine Brookes, Deputies Attorney General, for Appellant.

Newlin & Ashburn and Ray J. Coleman for Respondent.

SHENK, J.—The plaintiff sued the defendant, as Bank and Corporation Franchise Tax Commissioner, for a refund of a portion of the franchise taxes paid for the taxable year July 1, 1938, to June 30, 1939, on the theory that on October 27, 1938, it had voluntarily wound up its affairs and been dissolved. It recovered judgment for the sum of $3,644.62, which represented the proportion of the first installment of the tax paid by it for the months of the taxable year following dissolution.

The defendant prosecutes this appeal from the judgment on the ground that the plan and procedure adopted by the plaintiff to effect a dissolution was in reality a reorganization or a merger of the plaintiff with its parent corporation. If it was such a reorganization or merger by virtue of the provisions of section 13 (k) of the Bank and Corporation Franchise Tax Act (Stats. 1933, p. 869, as amended, Deering's Gen. Laws, 1937, Act 8488), the plaintiff was not entitled to the refund.

On November 6, 1928, the people adopted section 16 of article XIII of the Constitution which imposed on corporations an annual tax measured by four per cent of their net income for the privilege of exercising their corporate franchises. In 1929 the Legislature passed the Bank and Corporate Franchise Tax Act to carry into effect the provisions of that section. (Stats. 1929, p. 19.) The act of 1929 required the payment by corporations doing business in this state of a tax measured by net income, to be computed at the rate of 4 per cent upon the basis of net income for the next preceding fiscal or calendar year. A minimum tax of $25 was provided. Thus the tax imposed on the exercise of the corporate franchise during the first effective year (1929) under the act was measured by the percentage of net income for the preceding 1928 fiscal or calendar year. If a corporation was dissolved during the taxable year it was required to pay the tax only for the months of the taxable year prior to dissolution measured by the net income received during a similar proportion of the preceding year. ( Stats. 1929, p. 1555.) Thus a corporation, if deemed advisable, could be dissolved at the close of a fiscal year and thereby avoid payment of a franchise tax for the ensuing year, or it could be dissolved before the end of a taxable year and by virtue of the fact of dissolution obtain a refund of a proportion of the tax paid for that year. Reorganization, merger or consolidation of the dissolved company did not obviate those possible results under the act as it was drafted, and the results ensued whether tax avoidance was intended or was merely incidental to the main purpose of the dissolution. Thus inequalities in franchise tax levies resulted.

In 1931 (Stats. 1931, p. 1348), the Legislature created the Tax Research Bureau consisting of the governor, the director of finance and the board of equalization, whose duty it was to make a full and complete investigation of the actual

operation of the systems of revenue, taxation and public finance of the state and its political subdivisions. It was also the duty of any corporation or individual to make reports to the bureau when requested to do so on matters consistent with the purposes of the act. Upon the basis of information thus obtained the bureau was required to report to the people and the Legislature concerning matters of revenue, taxation, and public finance and to make recommendations thereon.

On December 1, 1932, the tax bureau made its report based on an analysis prepared at its request by Roger J. Traynor and Frank M. Keesling. The bureau's report contained the following statement:

"The present provisions of section 13 relating to the computation of the taxes on banks or corporations which dissolve or withdraw from the State or which commence to do business in the State make no exception in the case of corporate reorganizations, consolidations and mergers. Hence, simply because of a change in the corporate structure by which a business is operated, the amount of taxes due the State for the privilege of operating that business in a corporate form will vary from what it would have been otherwise. Provision should be made for measuring the tax by the same income and allowing the same offsets had a reorganization, consolidation, or merger not occurred."

In 1933 (Stats. 1933, p. 869), the Legislature amended certain sections of the Bank and Corporation Franchise Tax Act. Provisions of section 13 for payment of the tax by a reorganized, consolidated or merged corporation were amended and the term "reorganization" was defined to include, "(1) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred; or (2) a recapitalization; or (3) a mere change in identity, form or place of organization however effected." The same section was further amended to provide that a corporation which was dissolved during any year should pay a tax only for the months of the year preceding its dissolution, but that taxes levied under the act should "not be subject to abatement or refund because of the cessation of business or corporate existence of any bank or corporation pursuant to a reorganization, consolidation or merger." The foregoing

quoted provisions were retained in section 13(h) and (m) respectively by the amendments of 1935. (Stats. 1935, p. 967.) By amendments in 1937 (Stats. 1937, p. 2331), the definition of "reorganization" was included in sub-section (j) and the words "or (4) a merger or consolidation" added thereto. The prohibition against refunds or abatements in cases of reorganizations, consolidations or mergers was retained as sub-section (k). Until 1939 the act provided that the basis for ascertaining the gain or loss from disposition or exchange of property should be determined in accordance with the provisions of sections 112 and 113 of the Federal Income Tax Law.

With the foregoing legislative history as a background we turn to the merits of this case.

The facts are stipulated. They show that some time prior to the dates hereinafter mentioned the San Joaquin Cotton Oil Company acquired for cash all of the stock of the plaintiff, San Joaquin Ginning Company, both of which were organized under the laws of California. On September 14, 1938, the plaintiff filed its return for the taxable year July 1, 1938, to June 30, 1939. It reported a net income for the preceding fiscal year of $587,176.69, and a tax of $23,487.07 for the ensuing taxable year. It accompanied its return with a payment of $11,743.54, as the first installment of the reported tax. On October 26, 1938, the plaintiff, upon the vote of its sole stockholder and parent corporation, San Joaquin Cotton Oil Company, elected to wind up its affairs and for a voluntary dissolution pursuant to an agreed plan of liquidation. The plaintiff filed the certificate of dissolution required by law, and upon payment of all of its debts, the balance of its assets and property, with the exception of two leases which were cancelled, was turned over in kind to the parent corporation in return for the stock held by it which was thereupon cancelled. It was stipulated that thereafter the property was used by the parent corporation in the conduct of the same business operations formerly conducted by the plaintiff and with substantially the same patrons and customers. New leases with the same lessees were executed. The distribution of the assets did not alter the kind of business or operations formerly carried on by the plaintiff.

On January 11, 1939, the plaintiff, pursuant to section 13(k), filed its claim for a refund of the sum of $3,644.62, representing the proportion of the first installment computed

for the portion of the taxable year which followed the plaintiff's dissolution. The claim was denied and the plaintiff brought this action to recover the claimed refund. As we have seen, section 13(k), as it read at the time involved, prohibited any refund because of the cessation of business or corporate existence pursuant to a reorganization, consolidation or merger; and subsection (j) defined "reorganization" in part as a mere change in identity, form or place of organization however effected, or a merger or consolidation.

The plaintiff urges that the liquidating transaction between it and its parent corporation was nothing more than a dissolution and distribution of its assets to its sole stockholder. The defendant contends that it amounted to a reorganization as defined by subsections (3) or (4) of section 13(k). The plaintiff argues that a strict construction of the tax legislation should apply; therefore, that the provisions of section 13(j) and 13(k) refer only to statutory consolidations or mergers, and that reorganization is concerned with changes in the same corporate structure and not with a dissolution and distribution of assets to a corporate stockholder.

██ The rule of strict construction invoked by the plaintiff is not applicable in resolving the meaning of the quoted portions of subdivisions (j) and (k) of section 13. The rule to be applied in the interpretation of the terms reorganization, merger and consolidation in relation to exemptions, abatements and refunds in the taxing provisions is the rule of liberal construction. And the language is language of exemption even though a portion thereof partakes of the form of a taxing provision. ██ In order to prevail in its claim for refund the plaintiff must show that the change effected by the statutory dissolution and liquidation was in reality a change of substance as well as of form. If the procedure adopted effected a change only in the form of the corporate structure without any substantial change in the business operations and interests involved, it must be said to result only in a reorganization, consolidation or merger within the meaning and purpose of the provisions of the statute. The legislature provided that a reorganization included a mere change in identity, form or place of organization, *however effected*. It need not have used broader language to indicate its intention that such a change in identity or form effected by dissolution would disentitle the taxpayer to any refund or abatement which it otherwise would be

allowed by virtue of dissolution proceedings. ■ Also, in conformity with the legislative purpose, consolidation or merger as a form of reorganization is not restricted to statutory consolidation or merger in the absence of appropriate language of limitation.

The Supreme Court of the United States in *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415, 419 [53 S. Ct. 198, 77 L. Ed. 399], indicated that unusual cases may require disregard of the corporate form for tax purposes. The Legislature for tax purposes may disregard the corporate form. (*McCreery* v. *McColgan*, 17 Cal. (2d) 555 [110 P. (2d) 1051, 133 A. L. R. 800].) The following cases lend further support to the conclusion that a liberal construction is appropriate in determining what is a reorganization, consolidation or merger and that a disposition or distribution of assets in liquidation or dissolution proceedings may be a reorganization, consolidation or merger: *Pinellas Ice & C. S. Co.* v. *Commissioner*, 287 U. S. 462 [53 S. Ct. 257, 77 L. Ed. 428]; *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378 [565 S. Ct. 269, 80 L. Ed. 284]; *Helvering* v. *Metropolitan Edison Co.*, 306 U. S. 522 [59 S. Ct. 634, 83 L. Ed. 957], where it was said at page 529: ''We are of opinion that a transfer without valuable consideration, with the intent that the transferor shall, as the statute provides, cease to exist, made in accordance with the statute, has all the elements of a merger and comes within the principle that the corporate personality of the transferor is drowned in that of the transferee''; *LeTulle* v. *Scofield*, 308 U. S. 415 [60 S. Ct. 313, 84 L. Ed. 355]; *Cortland Specialty Co.* v. *Commissioner of Internal Revenue*, 60 Fed. (2d) 937, (Cert. denied, 288 U. S. 599 [53 S. Ct. 316, 77 L. Ed. 975]), wherein it was stated: ''Reorganization, merger and consolidation are words indicating corporate readjustments of existing interests''; *Ahles Realty Corp.* v. *Commissioner of Internal Revenue*, 71 F. (2d) 150, 151, (Cert. denied, 293 U. S. 611 [55 S. Ct. 141, 79 L. Ed. 701]) where it was said: ''A single transaction may not be broken up into various elements to avoid a tax,'' and it was concluded that liquidation proceedings amounted to a reorganization; *C. H. Mead Coal Co.* v. *Commissioner of Internal Revenue*, 72 F. (2d) 22, where the court stated that the legislative history of the reorganization provisions clearly demonstrated that the terms ''merger'' and ''consolidation'' were to be given a liberal interpretation to effectuate the legislative purpose; *Minnesota Tea Co.* v. *Commissioner*

*of Internal Revenue,* 76 F. (2d) 797, (Affirmed, 296 U. S. 378 [56 S. Ct. 269, 80 L. Ed. 957]), where the court inquired into the administrative construction, the intent of Congress, and the broad purposes of the act in arriving at a conclusion that a transfer of corporate assets to another corporation for a consideration which was largely cash, followed by a distribution of cash to three individual stockholders, was a reorganization (compare *France Co.* v. *Commissioner of Internal Revenue,* 88 F. (2d) 917, (Cert. denied, 302 U. S. 699 [58 S. Ct. 18, 82 L. Ed. 540]), which involved a liquidating transaction whereby the properties of one corporation were transferred to another corporation which owned all of the former's stock. The transaction for stock and cash sufficient to pay its indebtedness was held to be a sale and not a reorganization, for the purpose of imposing income tax on the realized gain) ; *Helvering* v. *Leary,* 93 F. (2d) 826, wherein a claimed liquidation was held to be a reorganization because the continuity of interest was present; *Helvering* v. *Schoellkopf,* 100 F. (2d) 415, (involving the same transaction and corporations), where it was recognized that a reorganization may take place through liquidation of a parent or subsidiary corporation and that such a change— direct ownership of physical assets rather than ownership through a holding company—was within the intention of Congress, the court saying: "The underlying purpose of the exemptions in § 112 is to disregard corporate manipulations which do not substantially affect the shareholders' interest in the properties"; *Commissioner of Internal Revenue* v. *Whitaker,* 101 F. (2d) 640, (also involved the same transaction and followed the decisions in other circuits to the effect that liquidation of one of the corporations did not prevent the reorganization from being within the statute) ; *Commissioner of Internal Revenue* v. *Food Industries,* 101 F. (2d) 748, (again involving the same transaction, decided by a different circuit court of appeals to the same effect, the court noting that a given result at the end of a straight path is not made a different result because reached by following a devious path) ; *Fisher* v. *Commissioner of Internal Revenue,* 108 F. (2d) 707, (Cert. denied, 310 U. S. 627 [60 S. Ct. 978, 84 L. Ed. 1398]), where a claimed liquidation and dissolution resulting in absorption of one corporation by another, although not strictly a merger, was held to partake of the nature of merger within the definition of *Pinellas Ice & Cold*

*Storage Co.* v. *Commissioner, supra,* and was therefore a reorganization.

The plaintiff contends that the foregoing cases should not be considered by this court. The language of section 13(j) defining reorganization was adopted in part from the Federal Income Tax Law. In this connection it is sufficient to note that section 112 of the Federal Revenue Act of 1928 from which the provisions of section 13(j) were patterned, defined reorganization as "(A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected." The federal law exempted corporations from reporting gain or loss on transfers which amounted to reorganizations as so defined. The purpose of the exemption was stated to be that where, pursuant to a plan, the interest of the stockholders of a corporation continued to be definitely represented in substantial measure in a new or different corporation, the exchange was to be treated as one not giving rise to present gain or loss to the extent of the continuity of interest. (*Groman* v. *Commissioner,* 302 U. S. 82, 89 [58 S. Ct. 108, 82 L. Ed. 63].) The history of the federal legislation disclosed that the object of the exemption was to postpone the taking of supposed gains or losses by virtue of exchanges which did not disturb the continuity of interest until the actual realization of such gains or losses. (*C. H. Mead Coal Co.* v. *Commissioner of Internal Revenue, supra.*) Inasmuch as the device of exchange was often used to accomplish a deductible loss from income, and since in other cases the imposition of a tax on gain not realized was premature and oppressive, a liberal interpretation of "reorganization" was adopted. The cases cited reflect such a view. It is true that the California Legislature did not adopt the language of the parenthetical phrase of clause (A) of the federal definition. The omission of an express declaration that merger or consolidation should include the transfer by one corporation to another of its voting stock or properties does not impel a conclusion

that it was the legislative intention to exclude elements of a de facto merger or consolidation from the meaning of reorganization. The plaintiff attempts to distinguish the cases cited herein on the facts involved and the differences in the statutory provisions. It is not necessary further to analyze those cases or to note the points of difference. It is sufficient that the views expressed by the federal courts in respect to analogous, although not identical, legislation afford support for our conclusion as to the correct interpretation of language patterned after the federal act. (See *Union Oil Associates* v. *Johnson, supra,* 727, 735.) The appropriate rule of interpretation, where the meaning and application of language of exemption in the taxing statute is questioned, requires a holding that the language as adopted was sufficiently broad to include as a reorganization any transaction which did not substantially change the continuity of interest.

In the present case the continuity of interest after dissolution and so-called liquidation is beyond question. The same interests were represented in fact, if not in form, by the same stockholders before and after the transfer. Before the transfer and dissolution the stockholders of the parent corporation owned their interest in the subsidiary through the parent's holding of all the stock of the subsidiary. After the transfer their interest continued in the same measure as before through the direct ownership by the parent of the subsidiary's properties. No change of interest can be said to have occurred to warrant the conclusion that a reorganization within the language of the definition had not taken place. No special significance to the contrary may be accorded the fact that in 1939 (Stats. 1939, page 2948) the Legislature amended section 13(j) to include expressly within the meaning of ''reorganization,'' a distribution in liquidation by a corporation of all or a substantial portion of its business or property to a corporate stockholder. It is noteworthy that a mere dissolution and liquidation proceeding was not included in the federal definition of merger or consolidation (clause A), but that nevertheless in some of the cases above cited somewhat similar liquidation transactions were held to be reorganizations. We therefore observe that the inclusion of the quoted phrase in the 1939 statute did not necessarily amount to a declaration by the Legislature that something was thereby added which was not within the language of the definition as theretofore in force. The fore-

going observations are a sufficient basis from which to draw the conclusion that such a transaction was within the meaning of reorganization as theretofore defined by the Legislature. The addition in 1939 of the specific type of transaction as constituting a reorganization was intended to clarify rather than to expand the definition of "reorganization." It has been held that if a certain class of taxpayers is resisting payment of taxes pursuant to a claimed construction of the taxing statute, the Legislature in enacting an addition to the statute may very well be deemed to intend a clarification of its previous language rather than a change in the existing law. (*Union League Club* v. *Johnson,* 18 Cal. (2d) 275 [115 P. (2d) 425].)

The foregoing sufficiently answers all of the plaintiff's contentions.

The judgment is reversed.

Gibson, C. J., Curtis, J., Edmonds, J., and Carter, J., concurred.

Traynor, J., did not participate herein.

Respondent's petition for a rehearing was denied May 28, 1942. Traynor, J., did not participate therein.