[Civ. No. 31455. First Dist., Div. Four. Sept. 12, 1972.]

ENVIRONMENTAL DEFENSE FUND, INC., et al.,
Plaintiffs and Appellants, v.
COASTSIDE COUNTY WATER DISTRICT et al.,
Defendants and Respondents;
THE PEOPLE ex rel. EVELLE J. YOUNGER, as Attorney General,
Intervener and Appellant.

696

**COUNSEL**

Thomas J. Graff for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, E. Clement Shute, Jr., and Donatas Januta, Deputy Attorneys General, for Intervener and Appellant.

Hanson, Bridgett, Marcus & Jenkins, John J. Vlahos and David J. Miller for Defendants and Respondents.

**OPINION**

**DEVINE, P. J.**—This is an appeal from an order dissolving a preliminary injunction. The injunction had prevented further construction of a water supply and storage system until an environmental impact report should be submitted to the San Mateo County Planning Commission, copies be sent to counsel, and further hearing be held. At the subsequent hearing, a report having been submitted to the commission and copies duly sent, the court dissolved the injunction, saying in a memorandum accompanying the order, "It is not the function of this court to consider the adequacy or thoroughness of this report in these proceedings." Plaintiffs appealed, contending that the court did have authority and the duty to consider the adequacy of the report (although not the correctness of its conclusions), and sought writ of supersedeas. We granted supersedeas, because the project would have been completed during the process of appeal, thereby reviving the preliminary injunction and halting further construction. Respondents sought a hearing by the Supreme Court, for the purpose of obtaining an order vacating the writ of supersedeas, but hearing was denied.

The project of the Coastside County Water District is designed to increase the supply of water to an area along the coast from a point south of the City of Half Moon Bay to the southerly limits of Moss Beach. Almost all of the water for the needs of the area presently is supplied, by contract, from the water system of the City and County of San Fran-

cisco. But the contract requires that the district develop local sources of supply, and that water in excess of 1.5 million gallons per day be taken from a certain reservoir, to which a costly pipeline would have to be built. The needs of the area are pressing against the present sources of water. In 1970 the district engaged Kennedy Engineers to prepare a "conceptual design report" regarding development of Denniston and San Vicente Creeks. Appropriative rights to these creeks had been granted by the State Resources Control Board in 1969, complete application to the proposed use to be made on or before December 1, 1972. On January 31, 1971, the conceptual design report was submitted. In this report there were proposed the construction of (1) a water treatment plant adjacent to Denniston Creek, (2) a storage tank, (3) a diversion dam on the San Vicente Creek, (4) a pump station and five wells on both creeks, and (5) the necessary interconnecting pipelines between the facilities. In the report it was noted that this project ("Denniston Creek Project"), when completed, would approximately double the district's water supply (4,000 meters), thereby permitting the installation of 3,200 new residential water services. However, the report also noted that the Denniston Creek portion of the project could be constructed as a first phase (i.e. (1) the installation of the pump station to divert water from the Denniston Creek, (2) the water treatment plant, (3) the storage tank, and (4) the necessary interconnecting pipelines) with the San Vicente portion being delayed until required by district water demand.

On July 13, 1971, the board of directors drew up and approved the plans and specifications for the Denniston Creek portion of the "project." The contract was awarded to the low bidder, COAC, Inc., on September 14, 1971, at a public meeting of the board. At this meeting, it seems that the "Denniston Creek" portion of the "Denniston Creek Project" was considered as only the first phase in the implementation of the entire development, because in answer to a director's question, Mr. Kennedy replied that the project would double the district's water capacity. This result would be possible, according to the data supplied, only if the entire project were ultimately completed.

On September 29, 1971, one of the plaintiffs to this lawsuit, Committee for Green Foothills, a nonprofit corporation, admonished the district, in writing, of the necessity for filing an environmental impact report. No report having been filed, three nonprofit corporations, Environmental Defense Fund, Inc., Committee for Green Foothills, and Save Our Shoreline, and two residents of the district filed the complaint for injunction. Shortly thereafter, the Attorney General filed a complaint in intervention

on behalf of the People of the State of California, seeking the same relief. It was the position of the district that it was not required by law to file an EIR.[1] It is unnecessary to examine that matter now. The judge decided that the statutes do require the EIR and on February 10, 1972, granted a preliminary injunction against continuing the construction; the district did not appeal, but filed an EIR, prepared by Kennedy Engineers, eight days after the issuance of the injunction. That the EIR was insufficient to meet the demands of the California Environmental Policy Act (Pub. Resources Code, § 21000 et seq.) was asserted by plaintiffs before the San Mateo Planning Commission and is asserted before us now. The particulars are set forth below.

The planning commission met on March 8 and March 22, 1972. Counsel for the plaintiffs and for the plaintiff in intervention, respectively, objected that the report was inadequate. On March 27, 1972, the planning commission issued a determination that Phase I of the water district's project was in conformity with the county master plan pursuant to section 65402 of the Government Code; and that the EIR, with respect to Phase I, was "acceptable" in accordance with the California Environmental Quality Act (CEQA). On April 6, 1972, the court issued an order dissolving the injunction, after having heard objections raised by plaintiffs and plaintiff in intervention. The court found that, since the EIR was filed with and accepted by the San Mateo Planning Commission, the requirements of CEQA had been complied with, and, as said above, that it is not the function of the court to consider the adequacy or thoroughness of the report.

We are faced with the problem of deciding what are the functions of the district, the county planning commission, and the superior court in respect of environmental impact reports submitted under the provisions of the California Environmental Quality Act. We are informed by counsel for the parties (who are knowledgeable in the law of conservation) that this is the first case in which the problem has been presented, for although there are other cases in various stages of appeal, they have to do with the question whether it is the duty of different agencies to file an EIR at all, or whether the act's requirements are retroactive to projects commenced before it was enacted. But although prior judicial decisions are lacking and although the Office of Planning and Research, which is charged with the duty of developing objectives, criteria and procedures to assure

---

[1] This abbreviation, which appears in the briefs, will be used at places in the opinion. In federal cases, the term EIS is employed, because the national act refers to an environmental impact *statement*.

the orderly preparation and evaluation of environmental impact reports (Pub. Resources Code, § 21103) has not yet issued guidelines (the federal agency, the Council on Environmental Quality, has done so (36 Fed.Reg. 7724)), we are not without potent assistance in interpreting the new law.

■ In the first place, the Legislature has declared that it is the policy of the Environmental Quality Act of 1970 (which became effective November 23, 1970) to "[d]evelop and maintain a high-quality environment now and in the future, and take all action necessary to protect, rehabilitate, and enhance the environmental quality of the state." (Pub. Resources Code, § 21001, subd. (a).) This declaration is followed by others of like nature, concluding with a statement of policy to "[r]equire governmental agencies at all levels to consider qualitative factors as well as economic and technical factors and long-term benefits and costs, in addition to short-term benefits and costs and to consider alternatives to proposed actions affecting the environment." (Pub. Resources Code, § 21001, subd. (g).) To be sure, the effectuating sections of the act are less heroic than is the declaration of policy, perhaps because the act is a "first step" and because implementation by the Office of Planning and Research is expected; but the declaration justifies, if indeed it does not demand, that the operative parts of the act be construed liberally.

In the second place, judges are not unmindful of the need for protection of natural resources, and although they are necessarily less free to create effective action than are legislative and executive bodies and the electorate, nevertheless, as was said by a former Attorney General, "courts exist as the final vindicators of these rights [to environmental protection] and the final arbiters of the interests that compete before legislative and administrative bodies." (Thomas C. Lynch and Jan S. Stevens, *Environmental Law—The Uncertain Trumpet,* 5 U.S.F. L.Rev. 10, 24.)

■ Lastly, we have the help of several decisions, referred to at appropriate places below, by federal courts in construing the National Environmental Policy Act. (83 Stat. 852, 42 U.S.C. § 4331 et seq.) The federal act became law on January 1, 1970, just a bit short of a year before that of California. The two statutes are so parallel in content and so nearly identical in words that judicial interpretation of the federal law is strongly persuasive in our deciding the meaning of our state statute. (*San Joaquin Ginning Co.* v. *McColgan,* 20 Cal.2d 254, 263 [125 P.2d 36]; *Gregory* v. *State of California,* 77 Cal.App.2d 26, 29 [174 P.2d 863].)

The California Environmental Quality Act provides, in Public Resources Code section 21151, that all local governmental agencies other than

certain specified cities and counties "shall make an environmental impact report on any project they intend to carry out which may have a significant effect on the environment and shall submit it to the appropriate local planning agency as part of the report required by Section 65402 of the Government Code." Public Resources Code section 21100 sets forth the following elements which are to be contained in an environmental impact report: "(a) The environmental impact of the proposed action. (b) Any adverse environmental effects which cannot be avoided if the proposal is implemented. (c) Mitigation measures proposed to minimize the impact. (d) Alternatives to the proposed action. (e) The relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity. (f) Any irreversible environmental changes which would be involved in the proposed action should it be implemented." Section 21100 is almost identical, word for word, with section 102(2)(c) of the National Environmental Policy Act.

### FUNCTIONS OF THE PLANNING AGENCY
### AND OF THE COURTS

The parties differ on the function of the planning agency which is referred to in Public Resources Code section 21151. It is conceded by plaintiffs and the intervener (and by the district) that the planning agency has been given no power under the act to "veto" the project and to prevent its construction. Government Code section 65402, subdivision (c) expressly provides: "If the planning agency disapproves the location, purpose or extent of such acquisition, disposition, or the public building or structure, the disapproval may be overruled by the local agency." The district contends that the adequacy of the EIR is for the determination of the planning agency (in this case, the San Mateo County Planning Commission) and that review of that agency's determination may be had only by resort to traditional administrative mandamus wherein the agency is joined as a party defendant, the record of the planning agency proceedings is presented to the court and the plaintiff bears the burden of proving that the agency acted arbitrarily, capriciously or without evidentiary basis. Appellants to the contrary contend that the planning agency has no power under the act (Pub. Resources Code, § 21151), in the case of a local agency such as a water district (cities and counties under some circumstances are treated differently from other local agencies under section 21151), to make a decision that is binding on anyone as to the adequacy of an EIR. The function of the planning agency, say plaintiffs, apart from its task of examining the project in respect of the county's master plan, is that of providing information and advice. Thus, paradoxically, those

who take the role of guardians of the environment would seem to weaken the authority of a potentially protective agency, and the project builder would seem to support that authority.

But this is a paradox; its appearances are fundamentally false. Actually, because the planning agency does not have power to prevent the project itself, its disapproval of an EIR would do no more than what plaintiffs contend it may: that is, give information to that part of the populace, whether in public office or not, of the planning agency's views and of others whose views ought to be expressed therein. On the other hand, if defendants' position be upheld, approval of the EIR (even when given in the single and rather feeble word "acceptable") by the planning agency would give to the EIR the prima facie validity which is accorded administrative decisions and would remove the case from the injunctive process of the courts, placing it in the realm of possible administrative mandamus.

■ We conclude that the position of plaintiffs and the intervener is correct. 1) There is no statute which gives authority to a planning agency to *decide* whether or not an EIR complies with the demands (general in form until supplemental action by the Office of Planning and Research is forthcoming) of the statute. ■ The process of administrative review is one of affirming or setting aside a *decision* which has been made by a board, commission or officer who has been given authority to hear, take evidence, often is directed to make findings, and finally, to decide. A *decision* must be more than a pronouncement which can be operative one way (approval of the EIR) but ineffectual in fact, if not in form, the other (disapproval of the EIR). The planning agency does not have such powers and duties in respect of EIR. 2) Administrative review by classical mandamus procedure would appear to be ineffectual in view of the power of the local agency to proceed once it has filed *any* EIR, or at least (for a palpable sham somehow would be held a nullity) any EIR of some substance, even if wholly inadequate. A project could be built while the mandamus were pending or so far constructed during the proceedings that review would be futile. In that case, a writ of mandate, if granted, apparently would only direct that a new EIR be filed to show what might then, the project being done, be apparent to everyone. There is, of course, the possibility of a stay order in a case of administrative mandamus; but what could it stay? Not the project itself, but only approval (or the more qualified act of finding "acceptable") of the EIR. 3) The federal cases support the use of the injunctive process in dealing with the statement (EIS) required by the National Environmental Protection Act (NEPA). In *Environmental Defense Fund* v. *Corps of Eng. of U.S. Army,* 325 F.

Supp. 749, an EIS was held to be deficient in 10 respects, and construction of a dam in Arkansas was halted on the ground of noncompliance with the NEPA. In *Natural Resources Defense Council, Inc.* v. *Morton,* 458 F.2d 827, an injunction issued by the district court was upheld because of insufficiency of the EIS in respect of oil and gas lease contracts on the Outer Continental Shelf off Louisiana. Besides, in *Conservation Council of North Carolina* v. *Froehlke,* 340 F.Supp. 222, affirmed 4 ERC[2] 1044, and *Environmental Defense Fund* v. *Corps of Engineers,* 4 ERC 1097, the federal courts, ruling that the EIS *did* satisfy the law, nevertheless did not question their own right to pass upon the sufficiency of the reports.

Respondents point out that under the NEPA there is no provision for review of an environmental impact report by an administrative agency, but there is such provision in Public Resources Code section 21151, wherefore the injunctive process is appropriate in the federal cases, but not in state cases. But the power to examine without the power to control is not true administrative review.

In sum, the strong statement of public policy in the CEQA, together with the demand therein for EIRS, combined with the lack of grant of power to local planning agencies to make binding decisions on the sufficiency of the reports, convince us that the courts properly may use their ancient and purposeful instrument of injunction to deal with a need for effective equitable action in a new but universally recognized situation, and that the superior court judge (who, of course, had no judicial precedent within the state) was in error in holding that it was not a judicial function to consider the adequacy of a filed EIR.

It is argued by respondents that the interpretation which we have given above would emasculate the CEQA because it would make the filing of an EIR with a local planning commission, as required by the statute, an idle act. We do not accept this conclusion. The preparation of the EIR demands thoughtful consideration of public interests transcending such necessary elements as always have been present, e.g., engineering and economic feasibility. Those who prepare the EIR may not limit their vision by the boundaries of the district, nor by purely physical auxiliaries or obstacles to a project's success which may be found beyond the borders. Moreover, the planning agency by criticism and adverse comment may persuade the directors of a district to revise an EIR. Revision of a project itself, or even abandonment, may follow, not by the use of any authority

---

[2]The reference is to Environmental Reporter—Cases.

of the planning commission which is not given by the act, but by reason of thoughtful reconsideration.

■ But the EIR has another function: the informing of the executive and legislative branches of government, state and local, and of the general public of the effect of the project on that revered resource which we call "The Environment." Obviously, the impact often must be deleterious to some extent to virgin land, to air, to beauty of unspoiled places because of the needs of the times. But the EIR must fulfill the role of disclosure of qualified estimations of the best way, all things considered, of meeting the demands of the present while preserving and, if possible, enlarging an ample inheritance for the future. The impact report provides evidence that the decision making has in fact been made and it allows those who are removed from the initial process to evaluate and balance the reported factors in their own judgment. (*Calvert Cliffs' Coord. Com.* v. *United States A. E. Com'n,* 449 F.2d 1109.) Environmental ramifications, be they apparent or covert, must be investigated by the agencies of government. (*Environmental Defense Fund* v. *Corps of Eng. of U.S. Army,* 325 F.Supp. 749.)

In sustaining the propriety of the injunctive process, we are aware that a certain burden will be added to those already carried by the courts. But administrative mandamus (which respondents contend applies) would do so, too, unless it were ineffectual and therefore unused. ■ But we envisage a limited use of the injunction in the control of the EIR. The court does *not* have the duty of passing on the validity of the conclusions expressed in the EIR, but only on the sufficiency of the report as an informative document. (See *Natural Resources Defense Council, Inc.* v. *Morton,* 458 F.2d 827; *Environmental D. Fund* v. *Corps of Eng. of U.S. Army,* 342 F.Supp. 1211.) A court would not be obliged to act upon unsubstantial defects. It is to be anticipated that guidelines for an EIR will be promulgated by the Office of Planning and Research, which will eliminate uncertainty and reduce or do away with the need for judicial intervention.

## The EIR

Having decided that the courts may review the sufficiency of an EIR, we proceed to discuss the particular EIR in this case. Preliminarily, we observe that it may be the misfortune of the district that it is the first agency to have been the object of the kind of judicial intervention which has been employed here. But the district is in a locale of relatively un-

touched coastline, considering its proximity to the great urban centers of the San Francisco Bay area, so that its activities, like those of all districts along the shore of the Pacific Ocean and its bays, may be expected to be the subject of more than ordinary vigilance, and are of considerable concern to the courts. ■ We observe, too, that the EIR, having been prepared and submitted within a short time, under compulsion of the injunction, must be specially scrutinized. Since the project was then under way, there would be an understandable tendency to rationalize what was already done. A study must not be a " '*post hoc* rationalization.' " (*Citizens to Preserve Overton Park* v. *Volpe,* 401 U.S. 402, 420 [28 L.Ed.2d 136, 155, 91 S.Ct. 814].) The research is to be directed towards formulation of a program, not to substantiate a program already decided upon. (*Environmental Defense Fund* v. *Hardin,* 325 F.Supp. 1401.) We say this without suggesting bad faith on the part of the district; we discern no reason to doubt its protestations of eagerness to protect the beauty and livability of the domain which it serves. But the pressure of time was acute. No doubt much of what was in the EIR had been thought of earlier; nevertheless, the thrust of the EIR had to be toward the theretofore unreported elements of environmental protection.

■ Plaintiffs and the intervener assert inadequacy of the report in two general respects: first, that it does not clearly disclose the integrated nature of the project, but deals only with Phase I thereof only vaguely; and second, that objections of qualified experts are not even mentioned in the EIR. We shall consider these more or less separately, but the two overlap. ■ It should be understood that whatever is required to be considered in an EIR must be in that formal report; what any official might have known from other writings or oral presentations cannot supply what is lacking in the report. (See *Greene County Planning Board* v. *Federal Power Com'n,* 455 F.2d 412, 420, 421.) Of course, what should be there but is missing must be made known from other sources.

The conceptual design report made by Kennedy Engineers in 1970 embraced a project larger than that of Phase I. There was substantial evidence, the superior court judge wrote in his memorandum accompanying the injunction, that defendants intend to complete the entire plan. ■ Fragmentation of a project which is intended to be completed as a whole may be permissible, but the EIR must then cover the integrated plan. (*Named Ind. of San Antonio Con. Soc.* v. *Texas Hy. Dept.,* 446 F.2d 1013; *Greene County Planning Board* v. *Federal Power Com'n, supra,* at p. 438; *Citizens Committee for the Hudson Valley* v. *Volpe,* 302 F.Supp. 1083, affd. 425 F.2d 97, cert. den. 400 U.S. 949 [27 L.Ed.2d 256, 91

S.Ct. 237].) The secretary of the planning commission reported to the district that the EIR was considered as applicable only to Phase I.

It may be that the district has so far divided its phases that a minimal report on the environmental aspects of later stages would suffice. But it is asserted by appellants that Phase I will cost 80 percent of what is planned, yet would produce but 30 percent of the water expected from the whole, wherefore the district would be practically, although not legally, committed to completing the entire design. The EIR should explain this matter. As things stand, the staff of the county planning commission has reported to the commission that the EIR does not answer a number of questions, among them the scope of the over-all project. (The staff also notes many deficiencies in the EIR, but most have to do with engineering rather than strictly environmental matters.) Donald J. Finlayson, a senior water engineer with the Department of Water Resources, also declared (to the superior court), having considered the EIR, that it is not possible to evaluate the effect of the proposed project on the ground water basin until a complete study is made of the basin, or, if the project proceeds before such study, a surveillance system should be installed to give early warning of sea water intrusion. This much convinces us that the subject of what is contemplated for the whole should be reported together with the question whether the construction of Phase I commits the district, in practical effect, to an enlarged plan.

The second general objection by appellants, that even within Phase I the EIR is deficient in not stating bona fide opposition, likewise has merit. As has been said of the federal section 102 statement (National Environmental Policy Act's counterpart of California's EIR): "Where experts, or concerned public or private organizations, or even ordinary lay citizens, bring to the attention of the responsible agency environmental impacts which they contend will result from the proposed agency action, then the § 102 statement should set forth these contentions and opinions, even if the responsible agency finds no merit in them whatsoever. Of course, the § 102 statement can and should also contain the opinion of the responsible agency with respect to all such viewpoints. The record should be complete. Then, if the decisionmakers choose to ignore such factors, they will be doing so with their eyes wide open." (*Environmental Defense Fund v. Corps of Eng. of U.S. Army* (1971) 325 F.Supp. 749, 759.) An extensive report dealing with the possible adverse effect by the water supply itself upon the agriculture of the region (artichokes and sprouts are specialty crops), and upon the quality of the hillsides, by a landscape architect, Tito Patri, was presented to the superior judge in support of the in-

junction. Nothing is said of this declaration in the EIR. Although an EIR surely need not contain every utterance pro or con, it is not proper to ignore the chief declaration which supported the granting of the injunction. In particular, the EIR should show (and the staff of the planning commission complains, as do appellants, that it does not) to what extent the new connections will make for development within the area. The district states in the EIR that it does not have the power to control the extent, type or manner of development which will be permitted by appropriate planning agencies. But if the district has fairly reliable information about prospective development, this should be stated even though there be no right of control of such a secondary effect. (*Natural Resources Defense Council* v. *Morton*, 3 ERC 1558, 1561-1568.)

Finally, we consider the fact that the critical comments by Mr. Finlayson, mentioned above, and those of William Greenwald, regional manager, and of John Ladd, associate water quality biologist of the California Department of Fish and Game (stating that issuance of water rights permits does not imply that all of the concerns of the department are satisfied, and expressing reservations about fish and wildlife protection), should be discussed in a supplemental EIR, although they may not have been completed until shortly after the planning commission hearing. Respondent water district is correct in its contention that there must be a termination point for comments which are in the nature of opposition or criticism, and ordinarily, we take it, this would be not later than the consideration of the EIR by the plannng commission. But in this case, the fact that the EIR was not filed until after the injunction was issued, put a limitation on the time for the expression of criticism. Although Public Resources Code section 21104 requires only that responsible state (as distinguished from local) officials shall consult with and obtain comments from other appropriate agencies, a policy is discernible which makes it right to direct that the comments which have been forthcoming from the officials named above be considered in the EIR.

It is therefore ordered that a supplemental EIR, prepared in accordance with the views expressed herein, be filed with the planning commission and submitted to this court. The district properly has expressed its concern about delay. We are willing to facilitate a final decision. Undoubtedly the district has been considering the subject of the criticism and reservations referred to above, and can prepare the supplemental report expeditiously. It does not appear suitable, if other means are at hand, for this court presently to reverse the order dissolving the injunction, to direct the superior court to modify its earlier injunction to meet the demands of

our decision and to review the sufficiency of the supplemental EIR, and to make an order which is subject to another appeal. We do have another means. When the EIR has been filed, we shall promptly hear the matter of dissolving the supersedeas. If the EIR does comply with the standards set forth herein, dissolution of supersedeas and affirmance of the order dissolving the injunction will follow. If it does not, this court will act otherwise.

Pursuant to the power of this court in respect of supersedeas, as expressed in *People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville,* 69 Cal.2d 533 [72 Cal.Rptr. 790, 446 P.2d 790], we order the Coastside County Water District to file a supplemental environmental impact report, prepared according to the directions of this opinion, with the Planning Commission of the County of San Mateo and with this court.* October 20, 1972, is the tentative date for hearing the subject of continuance or dissolution of the writ of supersedeas.

Rattigan, J., and Bray, J.,† concurred.

---

*Reporter's Note: See 28 Cal.App.3d 512 for opinion following the filing of a supplemental environmental impact report as ordered.

†Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.