[Civ. No. 4608. Fifth Dist. Apr. 27, 1981.]

MARGIE CLEARY, Plaintiff and Appellant, v.
COUNTY OF STANISLAUS et al., Defendants and Respondents.

COUNSEL

Whiting & Cain and Candice J. Cain for Plaintiff and Appellant.

Gilbert W. Boyne, County Counsel, and Carl O. Waggoner, Senior Deputy County Counsel, for Defendants and Respondents.

OPINION

BROWN (G. A.), P. J.—Appellant, Margie Cleary, is a neighbor of Tyrone Chu. Chu owns 31 acres of property located in a rural area at the southwest corner of McHenry Avenue and the Stanislaus River near Modesto. Early in 1977 Chu applied to the County of Stanislaus (hereinafter County) to amend the County's general plan to change the zoning designation of his property from an exclusive agricultural designation (A-2-10) to one of planned development (PD). The latter would permit commercial and recreational uses. Chu proposed a project for

the construction of a pitch and putt golf course, fishing ponds, restaurant, gift shop, pavilion and picnic area. The County environmental review committee ordered the preparation of an environmental impact report (EIR) pursuant to the California Environmental Quality Act (CEQA).

In February 1978, contrary to the County planning commission's recommendation, the board of supervisors (hereinafter Board) approved[1] the change in the general plan.

After entering findings of fact and conclusions of law, appellant's petition for a writ of mandate was denied by the superior court. This appeal is from that denial.

The core issues raised by appellant are: (1) Did the Board act contrary to law by approving the final EIR before a response to the draft EIR had been received from the state Reclamation Board? (2) Were the County's responses to the comments received on the draft EIR sufficient? (3) Did the Board prejudicially err in not making the findings required by Public Resources Code section 21081?[2] Our reversal is founded upon grounds (2) and (3).

The property lies 60 to 90 feet above sea level. A part of the site lies within the floodplain of the Stanislaus River. The property is not presently dedicated to any use, though adjoining property is used for agriculture.

The land surrounding the property is predominantly agricultural, consisting of tree fruits and nuts and pasture land. Approximately one-half mile to the southwest is a golf course and country club. To the southeast and west of the country club properties have been subdivided and developed as residential property. Within one and one-half miles in either direction along McHenry Avenue there is some commercial development.

■ The standard for review of the County's action is whether it prejudicially abused its discretion. Such abuse is established if the County has not proceeded in a manner required by law or if the agency's deter-

---

[1]This court was advised at oral argument that a subsequent conforming change in zoning was also granted by the Board and litigation is pending in the lower court relating to that action.

[2]All code references are to the Public Resources Code unless otherwise indicated.

mination is not supported by substantial evidence. (§ 21168.5; *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 840 [115 Cal.Rptr. 67]; see *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74 [118 Cal. Rptr. 34, 529 P.2d 66].)

The final EIR consisted of the draft EIR, verbatim comments and recommendations received on the draft and the responses of the County to the comments received on the draft EIR. (See Cal. Admin. Code, tit. 14, § 15146, of the administrative regulations for implementation of the CEQA, hereinafter referred to as guidelines.)

### Failure of the Board to Receive Comments From the State Reclamation Board Before Acting on the Final EIR

After preparation of the draft EIR in October 1977 the County sent copies to other local public and private agencies and individuals and to the State Clearinghouse for distribution to state agencies for comments and recommendations. The County set a deadline of November 28 for responses. A number of comments were received from persons living in the neighborhood and from state and other agencies.

On December 2, 1977, the State Clearinghouse certified that "review of your environmental document is complete," and attached copies of the comments from the Air Resources Board, Department of Fish and Game, and Department of Food and Agriculture. No request for an extension of time to comment was made. On February 21, 1978, the Board adopted the resolution approving the final EIR and approving Chu's requested amendment to the general plan. The state Reclamation Board's response was not mailed until May 9, 1978, more than four months after the November 28 deadline. ██ The trial court held that the County had satisfied its responsibility by acting after it received the certificate from the State Clearinghouse to the effect that the state review was complete. We agree.

Appellant would place the burden upon the County to both assure distribution of the draft EIR to each responsible state agency and to be certain that comments are received from each responsible state agency before action is taken on the final EIR.

Section 21153 provides: "Prior to completing an environmental impact report, every local lead agency shall consult with, and obtain

comments from, each responsible agency and any public agency which has jurisdiction by law with respect to the project, and may consult with any person who has special expertise with respect to any environmental impact involved." The section is exceedingly general. However, it has been implemented by guidelines adopted by the state Office of Planning and Research pursuant to the mandate of section 21083.

Section 15161.5 of the guidelines provides in pertinent part: "(a) EIR's and Negative Declarations to be reviewed by state agencies shall be submitted to the State Clearinghouse, 1400 Tenth Street, Sacramento, California 95814.

"(b) The following environmental documents shall be submitted to the State Clearinghouse for review by state agencies:

". . . . . . . . . . . . . . . . . . .

"(2) Draft EIR's and Negative Declarations prepared by a public agency where a state agency is a Responsible Agency or otherwise has jurisdiction by law with respect to the project.

". . . . . . . . . . . . . . . . . . .

"(c) Public agencies may send environmental documents to the State Clearinghouse for review where a state agency has special expertise with regard to the environmental impacts involved."

Guidelines section 15066, subdivision (g), states: "(g) When one or more state agencies will be a Responsible Agency, the Lead Agency shall send a Notice of Preparation by certified mail to each state Responsible Agency with a copy to the State Clearinghouse in the Office of Planning and Research. *The State Clearinghouse will ensure that the state Responsible Agencies reply to the Lead Agency within the required time.*" (Italics added.)

Guidelines section 15066, subdivision (g), places the obligation on the State Clearinghouse to distribute draft EIR's to responsible state agencies and insure that the appropriate state agencies reply to the county within the required time.

Section 15085, entitled "EIR Process," provides that *lead agencies must use the Clearinghouse in the consultation process described by section 15066.*

Finally, guidelines section 15162 specifically provides that failure to comment within the required time may be taken as no comment. It provides: "15162. Failure to Comment. If any public agency or person who is consulted with regard to an EIR fails to comment within a reasonable time as specified by the Lead Agency, it shall be assumed, absent a request for a specific extension of time, that such agency or person has no comment to make."

Considering all of the above provisions together, it is apparent that the State Clearinghouse was created for the purpose of assuring that draft EIR's (and other actions not here germane) are distributed to the appropriate responsible state agencies and that replies, if any, are received before the deadline. Contrary to appellant's contention, the County did not have the obligation to assure replies were received from responsible agencies before a final EIR was acted on. Not only could the County rely upon the silence of the Board of Reclamation (guidelines § 15162) but the County had received the affirmative certificate from the State Clearinghouse that the state's review was complete. Appellant's contention is without merit.[3]

### Sufficiency of County's Responses
### to the Draft EIR

The County received responses and comments from the state Air Resources Board, Department of Food and Agriculture and the state Department of Health and some local agencies. In addition numerous comments were received from residents in the general area of the proposed project. The trial court in substance found the responses of the County were sufficient and the EIR met the standards of CEQA and the implementing guidelines. Appellant attacks these findings.

■ An EIR is an informational document, the purpose of which is to provide the public and public agencies with detailed information

---

[3]In any event the letter ultimately received by respondent County from the Reclamation Board contained no indication that the Board anticipated any adverse environmental impact or serious deficiencies in the draft EIR submitted by respondent County. Rather, the letter merely corrects certain factual misstatements contained in the draft EIR.

about the effect which a proposed project is likely to have on the environment, to list ways in which significant effects might be minimized and to indicate alternatives to such a project. (§ 21061; see *No Oil, Inc. v. City of Los Angeles, supra*, 13 Cal.3d at p. 86.)

Section 15146, subdivision (b) states: "(b) The response of the Lead Agency[4] to comments received may take the form of a revision of the Draft EIR or may be an attachment to the Draft EIR. The response shall describe the disposition of significant environmental issues raised (e.g., revisions to the proposed project to mitigate anticipated impacts or objections). In particular the major issues raised when the Lead Agency's position is at variance with recommendations and objections *raised in the comments must be addressed in detail giving reasons why specific comments and suggestions were not accepted*, and factors of overriding importance warranting an override of the suggestions." (Italics added.) (See implementing guidelines, §§ 15150, 15140, subd. (e), 15146, and 15147.)

In *People* v. *County of Kern, supra*, 39 Cal.App.3d 830, 841-842, this court elaborated upon the requirements of the CEQA that legitimate and significant environmental impacts associated with the proposed development be fully, explicitly and specifically addressed in environmental impact reports. The court stated: "This regulation, together with other regulations which touch on the point (see Cal. Admin. Code, tit. 14, §§ 15027, 15085(a),(d), 15143(b)-(e)) make it abundantly clear that in preparing the final EIR, the County must describe the disposition of each of the significant environmental issues raised and must particularly set forth in detail the reasons why the particular comments and objections were rejected and why the County considered the development of the project to be of overriding importance. The policy of citizen input which underlies the act (*Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.*, 27 Cal.App.3d 695, 704-705 [104 Cal.Rptr. 197]) supports the requirement that the responsible public officials set forth in detail the reasons why the economic and social value of the project, in their opinion, overcomes the significant environmental objections raised by the public. In *Silva* v. *Lynn* (1st Cir. 1973) 482 F.2d 1282, 1285, a case decided under the analogous National Environmental Policy Act (see *Friends of Mammoth* v. *Board of Supervisors*, 8 Cal.3d 247, 260-261 [104 Cal.Rptr. 761, 502 P.2d

---

4The County is the lead agency in this instance. (Guidelines, § 15030.)

1049]; *County of Inyo* v. *Yorty*, 32 Cal.App.3d 795, 807 [108 Cal.Rptr. 377]), the court explained the policy thusly: 'Finally, and perhaps most substantively, the requirement of a detailed statement helps insure the integrity of the process of decision by precluding stubborn problems or serious criticism from being swept under the rug. A conclusory statement "unsupported by empirical or experimental data, scientific authorities, or explanatory information of any kind" not only fails to crystallize issues [citation] but "affords no basis for a comparison of the problems involved with the proposed project and the difficulties involved in the alternatives." [Citation.] Moreover, where comments from responsible experts or sister agencies disclose new or conflicting data or opinions that cause concern that the agency may not have fully evaluated the project and its alternatives, these comments may not simply be ignored. *There must be good faith, reasoned analysis in response.*' (Italics added.) (See also *Environmental Defense Fund, Inc.* v. *Coastside County Water District, supra,* 27 Cal.App.3d 695, 704-705, 708; *Portland Cement Association* v. *Ruckelshaus* (1973) 486 F.2d 375, 392-394 [158 App.D.C. 308].) Only by requiring the County to fully comply with the letter of the law can a subversion of the important public purposes of CEQA be avoided, and only by this process will the public be able to determine the environmental and economic values of their elected and appointed officials, thus allowing for appropriate action come election day should a majority of the voters disagree." (See also *People* v. *County of Kern* (1976) 62 Cal.App.3d 761, 769-774 [133 Cal.Rptr. 389]; *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1974) 44 Cal.App.3d 158, 160 [118 Cal.Rptr. 490].)

Adverting to the specific comments received by the County, the Air Resources Board indicated the air quality analysis was inadequate (indeed nonexistent) and that the potential effect on air quality was unknown. It expressed specific concern regarding the effect of the additional emissions from the development of the site and the increased automobile traffic, stating: "(2) . . . It [the County] also needs to address the existing emissions from the project site, the estimated emissions generated by the project, mitigation measures designed to reduce the impact of the project, and the project-related implications of the AQMP.

"(3) The DEIR [draft environmental impact report] needs to discuss the growth inducing impact of encouraging strip development along McHenry Avenue and its impact on air quality."

The Board's response was peremptory at best. It stated: "The Air Resources Board seems very concerned with the effect of the proposed project on air quality. This was not one of the concerns of the Environmental Review Committee and as such was not discussed extensively. On a regional basis the increase in traffic generated by the proposed use is insignificant. For this reason, mitigation measures were not discussed."

■ The Air Resources Board raised specific concerns. The response of the County suffers from the same weakness noted in *People* v. *County of Kern, supra*, 39 Cal.App.3d 830, 841-842, and *People* v. *County of Kern, supra*, 62 Cal.App.3d 761.

The County's response was nonspecific and general, stating, among other things, that it was not one of its concerns, and stating in a conclusional form that "the increase in traffic generated by the proposed use is insignificant." This response does not adequately treat the claimed inadequacies of County data contained in the draft EIR to determine the effect of the project on air quality (see *People* v. *County of Kern, supra*, 62 Cal.App.3d 761, 771) and violates the principles of *People* v. *County of Kern, supra*, 39 Cal.App.3d 830, 841-842, and specifically the statement in the latter case regarding conclusory statements: "'. . . A conclusory statement, "unsupported by empirical or experimental data, scientific authorities, or explanatory information of any kind" not only fails to crystallize issues [citation] but "affords no basis for a comparison of the problems involved with the proposed project and the difficulties involved in the alternatives." [Citation.] Moreover, where comments from responsible experts or sister agencies disclose new or conflicting data or opinions that cause concern that the agency may not have fully evaluated the project and its alternatives, these comments may not simply be ignored. *There must be good faith, reasoned analysis in response.*' (Italics added.)"

Thus the responses to the concerns expressed by the Air Resources Board were inadequate.

In its letter the Department of Food and Agriculture points out that while the draft EIR recognizes the subject site is virtually surrounded by prime agricultural land, there is a lack of detailed information concerning the extent and nature of such lands and the present zoning of the area surrounding the site. This information is essential to make "a clear analysis of the current growth trends and the conformance of the

proposed use with surrounding area uses .... As the EIR is wholly inadequate in this respect, an amendment thereto would be necessary for CEQA standards to be met."

█ The letter from the Department of Food and Agriculture further points out that the draft EIR does not address the effect of the proposed development on the equity position of those who have and those who have not placed their lands under long-term Williamson Act contracts, and the right of these owners to be protected in their equity positions from uneven leap-frogging along McHenry Avenue.

The Board's response was simply "[t]he Department of Food and Agriculture is concerned with the effect on agriculture in the area. This concern has been addressed in previous responses."

It is true that the draft EIR and some of the answers of the County to other letters addressed in general terms the effect of irreversibly committing the project property to a commercial use. While noting that this would be an unavoidable adverse impact, the County's discussion is not in terms of specific factual information suggested by the Department of Agriculture. Assuming that approval of this project makes certain a continuation of the growth along McHenry Avenue, it appears that any discussion of the growth in terms of the specific information requested by and referred to by the Department of Agriculture would provide the County with information necessary to the development of a more controlled and planned growth. Further, what is revealed by this information could be an exceedingly important consideration in approving or disapproving the project.

It therefore appears that under the criteria established by the statutory and case law the County's responses are inadequate to answer the specific concerns voiced in the letter from the Department of Agriculture.

The letter from the state Department of Health, Office of Noise Control, expresses some rather general concerns about the increased noise levels which a commercial development would possibly produce. The letter also notes that the draft EIR does not say whether or not the proposed project is in conformance with the noise element of the county general plan. The County's response in the final EIR to those general concerns is wholly adequate. The element of increased noise was considered in the draft EIR, and the comments in response to the Department

of Health's letter note that the proposed project is in conformance with the noise element of the county general plan. Since the letter from the state Department of Health raises no new issues, and is very general in nature, the response made thereto by the County in the final EIR when considered in conjunction with the draft EIR is sufficient.

As a further basis for error and without pointing out specific comments or issues raised, appellant states in her brief: "the County received public comments both by letter and at the public hearing dealing with the concerns raised by the various state agencies [as well as] additional concerns." This court is not required to search the record for error. ■ As the Supreme Court recently said, quoting from *McCosker* v. *McCosker* (1954) 122 Cal.App.2d 498, 500 [265 P.2d 21]: "'The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact, and an appellant who contends that some particular finding is not supported is required to set forth in his brief a summary of the material evidence upon that issue. Unless this is done, the error assigned is deemed to be waived. [Citation.] It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings.'" (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887 [160 Cal.Rptr. 516, 603 P.2d 881].)

Nevertheless, we have read the letters received from individuals and are of the opinion that none of the letters, either individually or in the aggregate, raises new environmental issues which the draft EIR had not recognized or which were noted in the comments by the aforementioned state agencies. Thus, the final EIR is not defective because it does not address such issues. (See guidelines, §§ 15150, 15140, subd. (e), and 15146.)

### *Failure to Make Findings Required by Section 21081*

■ Section 21081 makes mandatory certain findings by the Board where an EIR has been completed "which identified one or more significant effects" from a proposed project.[5]

---

[5]Section 21081 provides: "Pursuant to the policy stated in Sections 21002 and 21002.1, no public agency shall approve or carry out a project for which an environmental impact report has been completed which identifies one or more significant effects thereof unless such public agency makes one, or more, of the following findings:

One or more of the findings required were not made in this case.

"Significant effects" is defined by section 21068 as "a substantial or potentially substantial, adverse change in the environment." "Environment" is defined by statute to mean "the physical conditions which exist within the area which will be affected by a proposed project, including land, air, water, minerals, flora, fauna, noise, objects of historic or aesthetic significance." (§ 21060.5.)

Implied in the findings and conclusions of the court in approving the action of the Board is that the Board made all necessary findings required by CEQA.

The draft EIR (incorporated by the County into the final EIR) identified several significant effects of the proposed project. They were: "Although the native grasses which exist on the property would be destroyed, the riparian habitat would remain untouched. . . .

"   .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Perhaps the most important environmental effect would be the introduction of a commercial use into an agricultural area. As described above under the Environmental Setting section, the surrounding land is almost entirely agricultural with residential/recreational uses approximately 1/2 mile away. The agriculture is predominantly of a permanent variety consisting of orchards." (Both of the above comments are found under a section entitled "Significant environmental effect.")

Under the heading "Unavoidable adverse impacts," the report states: "The unavoidable adverse impacts of the proposal would be relatively few. First, the land would be irrevocably changed to commercial/recreational use. This impact may encourage further growth along McHenry Avenue. A certain amount of energy would be used in electrical and natural gas usage as well as fuel to operate the vehicles carrying

---

"(a) Changes or alterations have been required in, or incorporated into, such project which mitigate or avoid the significant environmental effects thereof as identified in the completed environmental impact report.

"(b) Such changes or alterations are within the responsibility and jurisdiction of another public agency and such changes have been adopted by such other agency, or can and should be adopted by such other agency.

"(c) Specific economic, social, or other considerations make infeasible the mitigation measures or project alternatives identified in the environmental impact report."

people to and from the site. Third, some land would be removed from the floodplain of the Stanislaus River."

Under the heading "Irreversible environmental changes" is found: "Only two possible irreversible changes could occur. First, a portion of the floodplain would be removed. Although the U.S. Corps of Engineers has said this causes no problem, the change will occur.

"Second, the area will be irrevocably committed to commercial uses. Once the structures are built, the land will no longer be suitable for many other uses. In addition, it may encourage growth along McHenry Avenue. This growth, given the proper political climate could be irreversible."

By adopting the EIR the Board necessarily adopted these findings. It follows that since the EIR identified these significant effects, the Board was required to make one or more of the findings set forth in section 21081 (see fn. 5, *ante*).

The judgment is reversed with directions to issue the writ as prayed.

Hanson (P. D.), J., and Andreen, J., concurred.

A petition for a rehearing was denied May 18, 1981, and the judgment was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied July 8, 1981.